**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**John Anton ·RICHARDSON, Ralph S. Bowman, Frank Salaman, Robert William Bradford, Defendants-Appellants.**

**Nos. 77–2203, 77–2204, 77–2262 and 77–2288.**

United States Court of Appeals, Ninth Circuit.

Oct. 26, 1978.

Rehearing and Rehearing En Banc Denied in No. 77–2288 Denied Dec. 18, 1978.

Rehearing and Rehearing En Banc Denied Dec. 22, 1978.

Rehearing and Rehearing En Banc Denied in Nos. 77–2203–04 Denied Jan. 4, 1979.

Jacob W. Friedman (argued), Joseph Brill, New York City, for defendants-appellants.

* Honorable John R. Bartels, Senior United States District Judge of the Eastern District of New York, sitting by designation.

1. This classification was challenged by a group of cancer victims in *Rutherford v. United States,* 399 F.Supp. 1208 (W.D.Okl.1975). There the district court enjoined the FDA from preventing the plaintiffs from obtaining Laetrile. The Tenth Circuit agreed that the FDA had failed to produce an administrative record to support its classification of Laetrile as a new drug and remanded for further proceedings to determine whether Laetrile was "grandfathered" under previous Food and Drug Acts. 542 F.2d 1137, 1142 (10th Cir. 1976). The FDA then held hearings, again finding that Laetrile was an unapproved new drug and was not exempt under the grandfather provisions. On review of that decision, in *Rutherford v. United States,* 438 F.Supp. 1287 (W.D.Okl.1977), the district court found the agency's classification to be arbitrary, capricious and an abuse of discretion because the record clearly established that Laetrile was exempt under the 1962 grandfather clause of the FDA. 438 F.Supp. 1287, 1294–98. It enjoined the FDA from enforcing the new drug statutes in regard to Laetrile, specifically prohibiting the FDA and the Customs Service from interfering with the importation of Laetrile. 438 F.Supp. 1287, 1301.

On the second appeal the Tenth Circuit did not discuss the grandfather clause issue which

Herbert B. Hoffman, Asst. U. S. Atty. (on the brief), Michael H. Walsh, U. S. Atty., Herbert B. Hoffman, Asst. U. S. Atty. (argued), San Diego, Cal., for plaintiff-appellee.

Before MERRILL and ANDERSON, Circuit Judges, and BARTELS,* District Judge.

MERRILL, Circuit Judge:

Laetrile is a substance (drug or vitamin) around which controversy for some time has raged as to whether it provides effective cure of or relief from cancer. The Food and Drug Administration has classified it as a "new drug" under 21 U.S.C. § 321(p): a drug not generally recognized by experts to be safe and effective. Under 21 U.S.C. § 355(b) as a result of this classification an application for approval of the new drug must be filed and the new drug cannot be transported in interstate commerce without such approval.[1] Approval so far has been

formed the basis of its first opinion in the case, but instead adopted a new theory, stating: "We are considering only cancer patients who are terminally ill and only their intravenous use of Laetrile. * * * What meaning can 'effective' have in the absence of anything which may be used as a standard? Under this record Laetrile is as effective as anything else. What can 'effective' mean if the person, by all prevailing standards, and under the position the Commission takes, is going to die of cancer regardless of what may be done. Thus there has been no standard here advanced by the Commission against which to measure the safeness or effectiveness of the drug as to the plaintiffs. Clearly the terms have no meaning under these circumstances, and certainly not the abstract meaning sought to be applied by the Commission. * * *

\* \* \* \* \* \*

Therefore, we hold as a matter of law that the 'safety' and 'effectiveness' requirements of the statute as now written have no application to terminally ill cancer patients who desire to take the drug intravenously." 582 F.2d 1234, 1237 (10th Cir. 1978). Thus the Tenth Circuit did not decide whether the district court was correct in holding that Laetrile could not be classified as a new drug.

withheld, which precludes importation of the drug and limits distribution of it in this country.

This case involves a conspiracy to smuggle the drug into the United States from Mexico and thereafter to distribute the smuggled merchandise. A twelve-count indictment was returned by a grand jury in the Southern District of California charging these four appellants and fifteen other co-defendants with two conspiracies—one to smuggle merchandise and one to receive, buy, sell, transport and conceal the smuggled merchandise, both in violation of 18 U.S.C. §§ 371 and 545—and also charging various substantive offenses. The trial of these appellants was severed from that of their codefendants. All four were found guilty of the two conspiracy counts. Appellant Bradford also was found guilty of three substantive counts: two of smuggling and one of receiving, concealing and facilitating the transportation of smuggled merchandise.

The record establishes that in 1971 one McNaughton (a codefendant) was engaged in a chemical manufacturing business in Sausalito, California. He decided to move his plant to Tiajuana, Mexico, and there to manufacture Laetrile. The plant was established under the name of Cyto Pharma. One Contreras (a codefendant) who maintained a cancer clinic in Mexico became co-owner of the enterprise. One Greczy (a coconspirator) who had acted as chemist for McNaughton in Sausalito, and two Del Rio brothers from Mexico (codefendants) were placed in charge of the plant. At the outset the plant produced only for Contreras' clinic. A surplus developed, however, and in the fall of 1971 it was decided by McNaughton, Contreras, Greczy and the Del Rios that the surplus should be brought into the United States for distribution. Since Customs officials regularly seized all declared Laetrile, this meant that the Laetrile would have to be smuggled in. One Thurston (coconspirator) was designated to act as distributor for McNaughton in the United States. Evidence as to the manner in which the conspiracy operated came from correspondence of Thurston seized under a state search warrant and from testimony of Greczy and numerous other codefendants, many of whom had actually brought Laetrile across the border and some of whom had engaged in knowing distribution.

Appellant Richardson is a medical doctor engaged in practice in Albany, California. Appellant Bowman is his office manager. Appellants Bradford and Salaman are active members of the Committee for Freedom of Choice in Cancer Therapy, which is engaged in seeking to remove the FDA classification of Laetrile or to secure its approval.

### Government Misconduct

■ Here, as in the district court, appellants seek to secure judicial recognition of the legitimacy of the use of Laetrile in the treatment of cancer. They contend that the FDA classification and its withholding of approval for Laetrile amounted to governmental misconduct. These questions, however, are not properly before us. Appellants were not convicted for possessing or using Laetrile but for conspiring to smuggle it, in violation of 18 U.S.C. § 545. That section makes it a crime knowingly and wilfully, with intent to defraud the United States, to smuggle or clandestinely introduce into the United States any merchandise that should have been invoiced. This court has held that the term "invoiced" in § 545 " 'carries the meaning attached to it in the customs law, viz., lawfully entered or declared'." *United States v. Boggus*, 411 F.2d 110, 112 (9th Cir.), *cert. denied*, 396 U.S. 919, 90 S.Ct. 245, 24 L.Ed.2d 198 (1969). The United States customs law as detailed by the Tariff Act of 1930, 19 U.S.C. § 1202 *et seq.*, requires a person entering the United States from a foreign country to declare and present for inspection all merchandise imported or brought in from a foreign country. 19 U.S.C. §§ 1459, 1461, 1484, 1485.

Thus, one bringing goods into the country who fails to properly declare or present the goods as required by the Act violates 18 U.S.C. § 545, whether importation of the merchandise was legal or illegal, *cf. United*

*States v. Kushner,* 135 F.2d 668, 670 (2d Cir.), *cert. denied,* 320 U.S. 212, 63 S.Ct. 1449, 87 L.Ed. 1850 (1943) (duty free gold). Appellants do not contest the fact that one entering the country is obliged to declare any Laetrile he is bringing in. Thus the fact that the FDA may have improperly classified Laetrile as a new drug is irrelevant to a conviction for smuggling.[2]

### Justification

■ Appellants contend that since Laetrile, when declared at the border, was regularly seized by Customs officials it could not be brought into the United States unless smuggled. Further they contend that it was needed in the United States to treat cancer patients. On these facts they invoke the defense of necessity or "choice of evils," traditionally a branch of the common-law doctrine of justification.

This defense is said to be available when the actor is faced with a choice of two evils and finds himself in a position where he may "either do something which violates the literal terms of the criminal law and thus produce some harm or not do it and so produce a greater harm." LaFave and Scott, *Handbook on Criminal Law* (1972) § 50, page 387. Thus it is asserted that society will benefit from the greater good that is accomplished by the violation of the literal language of the law. *United States v. Simpson,* 460 F.2d 515, 517–18 (9th Cir. 1972).

The defense of necessity, where it is recognized to exist, is hedged about with many conditions, at least one of which would prevent its application here: "[T]he assertion of the necessity defense requires that optional courses of action appear unavailable."

*United States v. Mowat,* 582 F.2d 1194 (9th Cir. 1978).

Here the obvious optional course of action was to take steps to render the "necessary" action legal—to pursue the course taken in *Rutherford v. United States, supra* note 1, in seeking to have the FDA classification of Laetrile set aside or to have it approved as a new drug. If it was felt that classification as a new drug does not justify seizure of Laetrile declared at the border, the seizure could have been legally challenged. Also, as the government suggests, another alternative was the production of Laetrile in the United States.

We conclude that there is no merit in this contention of appellants.[3]

### Sufficiency of the Evidence

Appellants Salaman, Richardson and Bowman contend that their conspiracy convictions were not supported by sufficient evidence. While the evidence clearly established that the Cyto Pharma group had entered into a conspiracy to smuggle and that appellants had received smuggled Laetrile and then distributed it among themselves and to others, appellants urge there is insufficient evidence tying them to the conspiracy. Their basic defense to the charge was that they believed that the Laetrile had been lawfully imported.

■ Viewing the evidence and the inferences reasonably to be drawn from it in the light most favorable to the government, *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942), there is sufficient evidence to support the jury's verdict and the finding implicit in it that appellants knowingly participated in the conspiracy.[4]

**2.** Other convictions for smuggling Laetrile have recently been affirmed by this court. *United States v. Luther,* 521 F.2d 408, 409 (9th Cir. 1975); *United States v. Westover,* 511 F.2d 1154, 1156 (9th Cir.), *cert. denied,* 422 U.S. 1009, 95 S.Ct. 2633, 45 L.Ed.2d 673 (1975).

**3.** On this defense and on that of government misconduct, appellants sought to introduce much evidence bearing on the validity of Laetrile as a cancer drug and their contentions that the FDA classification was improper. The dis-

trict court, after hearing, refused to allow the evidence to be introduced. Appellants assign this as error. Appellants were allowed to make an extensive offer of proof, however. For the reasons set forth in our opinion the defenses were not available and the offered proof was not relevant.

**4.** We refer to a few among many items. Salaman both received and shipped packages of Laetrile with false identifying information. One courier testified to making deliveries to

Appellant Bradford contends that his convictions on the substantive counts of smuggling and receiving were not supported by sufficient evidence. He presents two basic defenses; one, that the government did not establish that the Laetrile in question was unlawfully in the United States; and two, that the government did not establish that Bradford knew the Laetrile in question was smuggled.

■ While there was no direct evidence of illegal importation of the shipments in question or of Bradford's knowledge, there is ample circumstantial evidence to support the jury's verdict. Circumstantial evidence is sufficient to establish illegal importation. *See United States v. Scott*, 446 F.2d 509, 510 (9th Cir. 1971); *United States v. Gibbs*, 435 F.2d 621, 624 (9th Cir. 1970), *cert. denied*, 401 U.S. 994, 91 S.Ct. 1233, 28 L.Ed.2d 532 (1971). It is also sufficient to establish knowledge of illegal importation. *United States v. Newton*, 442 F.2d 622, 623 (9th Cir.), *cert. denied*, 404 U.S. 844, 92 S.Ct. 144, 30 L.Ed.2d 80 (1971). Evidence respecting the counts in question is dealt with at length in the government's brief and we do not choose to burden this opinion with an extended discussion of it. It is enough to note that the connection between Bradford and Cyto Pharma was clearly established by the testimony of couriers and telephone records of Bradford. The Laetrile in question had been manufactured at Cyto Pharma. The shipments followed the methods of operation proved to be followed by Cyto Pharma couriers. On each occasion there was similar coincidence of arrest of courier, seizure of shipment and communication between Bradford and Cyto Pharma. On one occasion Bradford called

Customs and requested to have the shipment released to him.

We conclude that the evidence supported the jury verdict on all convictions.

*Consecutive Sentences as Double Jeopardy*

■ Appellants were convicted of two separate conspiracies: one to smuggle; one to receive and distribute smuggled goods. Bradford and Salaman were sentenced to pay fines for each offense and thus received consecutive sentences. They contend that while the conspiracy involved two substantive offenses, it was but a single agreement and could not be made the basis for two separate counts without violating the double jeopardy clause. They rely on *Braverman v. United States*, 317 U.S. 49, 53, 63 S.Ct. 99, 87 L.Ed. 23 (1942). Before the district court they moved to dismiss the second count. The motion was denied.

The government's theory at trial was that separate and distinct conspiracy agreements had been entered into by McNaughton and his Cyto Pharma group with respect to smuggling and with respect to receiving and distributing, and that these appellants joined both ongoing conspiracies. The government notes that the objects, members and locales of the two conspiracies differed and justified a finding of two conspiracies. It points out that the evidence links some of the coconspirators to the smuggling operation while others are linked to the distribution operation. Under these facts, "two distinguishable conspiracies may be charged, prosecuted and punished when the jury so chooses to interpret the evidence." *United States v. Arteaga-Limones*, 529 F.2d 1183, 1194 (5th Cir.), *cert. denied*,

Salaman at the airport in San Jose where she would be driven to a secluded part of the airport and would be paid in cash. On one trip, when Salaman refused most of the shipment, the courier asked, "How do you expect me to pay the people that smuggled it?"

Bowman told an IRS agent that two checks on Richardson's account made out to cash were used to pay for the smuggling of Laetrile into the United States. Over 90 percent of the Laetrile used by Richardson was manufactured at Cyto Pharma. There was evidence that his

account at Cyto Pharma was personally handled by one of the Del Rio brothers. There was evidence that he once told a coconspirator that he obtained his Laetrile in the same way that appellant Bradford obtained his. Since, as appellants complain in discussing other assignments of error, it was not possible to get Laetrile across the Mexican border without smuggling it, it would seem most unlikely that Richardson and Bowman did not know that they were dealing with smuggled goods.

429 U.S. 920, 97 S.Ct. 315, 50 L.Ed.2d 286 (1976). There the court stated:

"The objects of the two conspiracies were different (importation and distribution). The persons involved were different; for example, the evidence links Cantu only to the 'distribution' portion. Finally, the locales were different. Castillo's account alleged that the importation took place in the Del Rio area; the distribution *began* there, but the ultimate consumers of the marijuana were in New York."

*United States v. Arteaga-Limones, supra,* 529 F.2d at 1194.

Appellants point out that both conspiracy counts alleged the same overt acts and identical coconspirators. This does indeed suggest one agreement rather than two, but is not sufficient to establish that fact as matter of law. The question whether there was but one agreement remained one of fact for the jury, *United States v. Roselli,* 432 F.2d 879, 898 (9th Cir. 1970), *cert. denied,* 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828 (1971), and was resolved against appellants by the verdict.

*Other Assignments of Error*

■ Richardson and Bowman contend that it was error to rule that if they took the stand they could be cross-examined concerning their income tax returns. They assert that this ruling in effect prevented them from testifying. The ruling, however, was preliminary and tentative and did not amount to a denial of right to testify. *See, e. g., United States v. Fulton,* 549 F.2d 1325, 1327 (9th Cir. 1977); *United States v. Murray,* 492 F.2d 178, 197 (9th Cir. 1973), *cert. denied,* 419 U.S. 942, 95 S.Ct. 210, 42 L.Ed.2d 166 (1974).

■ Denial of Salaman's motion for severance was not rendered abuse of discretion by the subsequent admission of evidence against Bradford. No objection was made to the admission of evidence and the motion for severance was not renewed at the close of evidence, and therefore was not preserved on appeal. *United States v. Gaines,* 563 F.2d 1352, 1355–56 (9th Cir. 1977).

■ Appellants Bradford and Salaman urge they were denied a fair trial by the failure of the trial court to grant them leave to take the depositions of certain Mexican nationals. We disagree. It is within the sound discretion of the trial court to grant or deny a motion to depose a proposed witness in a criminal trial. *See United States v. Nichols,* 534 F.2d 202, 204 (9th Cir. 1976). Federal Rule of Criminal Procedure 15(a) provides that a trial court may permit depositions when "it is in the interest of justice." It has been held that it would work an injustice to allow the deposition of fugitive codefendants. *See United States v. Kelly,* 349 F.2d 720, 769 (2d Cir. 1965), *cert. denied,* 384 U.S. 947, 86 S.Ct. 1467, 16 L.Ed.2d 544 (1966); *United States v. Murray, supra,* 492 F.2d at 195. Three of the Mexican nationals were fugitive codefendants and one was an unindicted coconspirator whose location was unknown. Under these circumstances it was not an abuse of discretion to deny the motion to depose. *United States v. Murray, supra,* 492 F.2d at 195.

■ Bradford did not move to suppress the fruits of a search of his car and cannot now, on appeal, raise the issue of the legality of that search. *United States v. Wysong,* 528 F.2d 345, 348 (9th Cir. 1976).

■ It was not error to deny Salaman's motion for an order granting use immunity to persons he desired to call as witnesses. The court has no power to make such a grant. *United States v. Benveniste,* 564 F.2d 335, 339 n. 4 (9th Cir. 1977).

■ We find no merit whatsoever in Salaman's contention that in permitting him to represent himself the court denied him adequate representation. The court repeatedly and adequately warned him of the dangers of self-representation and he repeatedly persisted in asserting his right to represent himself. *See Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

We find no merit in the contentions of Richardson and Bowman that they were deprived of fair trial by a cumulation of

**1242**

rulings and incidents during trial, or the contentions of Bradford and Salaman that there were numerous instances of prosecutorial misconduct. In neither instance do we find the cumulation to result in prejudice of any consequence.

■ There was no improper prosecutorial comment on Bradford's failure to testify. The comment was no more than an objection to Bradford's questioning of witnesses in such a leading fashion as to amount to the giving of unsworn testimony himself and was not of such a character that a jury would take it as a comment on the failure of Bradford to testify. *See United States v. Cornfield*, 563 F.2d 967, 971 (9th Cir. 1977), *cert. denied*, 435 U.S. 922, 98 S.Ct. 1484, 55 L.Ed.2d 515 (1978). In fact, the prosecutor's objection was made at a time when it was not yet clear that Bradford would not testify.

Judgment affirmed.