UNITED STATES of America, Appellee,

v.

Thomas WILSON and John MacGregor, Appellants.

Nos. 78–1829, 78–1867, 79–1014 and 79–1015.

United States Court of Appeals, Third Circuit.

Argued April 30, 1979.

Decided June 18, 1979.

23. *Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122, 1126 (5th Cir. 1969).

Joel Harvey Slomsky and Edward Reif, Philadelphia, Pa., for appellants.

Peter F. Vaira, U. S. Atty., Philadelphia, Pa., Michael J. Keane, Barry A. Friedman, Dept. of Justice, Washington, D. C., Robert E. Courtney, III, Special Atty., Philadelphia Strike Force, Philadelphia, Pa., for appellee.

Before ADAMS, GIBBONS and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

In this criminal case, the defendants' request for a deposition of a potentially crucial witness in a foreign country was denied primarily because he was a fugitive. We conclude that fact does not make the witness incompetent to testify and should be considered only in assessing the weight of the testimony. The denial of the deposition combined with the trial judge's misgivings about the credibility of an essential prosecution witness convince us that the convictions should be vacated and a new trial granted to the defendants.

Defendants were convicted on a number of counts of conspiracy to possess Pennsylvania Public Assistance checks stolen from the United States mails, 18 U.S.C. §§ 371, 1708, and of preparing false corporate income tax returns, 26 U.S.C. § 7206(1). In addition, defendant MacGregor was convicted under 18 U.S.C. § 1708 of possessing two of the stolen checks. The defendants were sentenced to a year and a day imprisonment, five years probation, and fines of $20,000 each. Appeal was taken from convictions obtained in a second trial, the first having ended in a mistrial after the jury had acquitted on some counts but was unable to reach verdicts on others.

Wilson and MacGregor were principals in two check-cashing agencies located in Philadelphia and organized as JATO Corpora-tion. The government maintained that during the period from February 1972 until August 1973, JATO purchased 842 stolen public assistance checks and, in addition, sold 1,807 stolen checks to Arrow Enterprises, another Philadelphia check-cashing firm. The prosecution's chief witness was Anthony Macchia who testified that JATO made a profit of 39.5% of the face value of each check purchased and cashed. In addition, he said that Arrow paid the face value of checks it received from the defendant agencies. In the early days of their relationship, the defendants delivered checks to Arrow already endorsed. Later, however, Macchia and others affiliated with Arrow forged the endorsements.

Proof of mailing of the checks was supplied by a state official who described the procedures used to send the checks to assistance recipients. Witnesses entitled to public assistance testified that certain checks addressed to them had not been received and other evidence showed that they had been deposited by either JATO or Arrow.

The government relied on the number of checks and Macchia's description of the profits to calculate the deficiency in JATO's reported taxable income. The indictment alleged the unreported income for 1972 to be $87,875, and $16,941 for 1973. However, on cross-examination Macchia changed his testimony to such an extent that substantial doubt was cast upon the accuracy of the calculations in the indictment. After this turn of events, the government called a revenue agent who submitted alternative computations to the jury using various interpretations of Macchia's testimony. Based on these alternatives, the prosecution contended that JATO's unreported income in 1972 was either $73,848, $34,512, or the indictment figure of $87,875. Similarly, the 1973 figures could have been $16,941, as set out in the indictment, or $15,146.

During the trial, the district judge expressed concern over Macchia's truthfulness, saying at one point that the witness "was devoid of credibility." The judge conveyed his misgivings to the Assistant Unit-

ed States Attorney and asked that he discuss the matter with his superiors. Defendants sought a new trial after the guilty verdicts were returned, but their motions were denied from the bench. Citing precedent that credibility of witnesses was for the jury, the trial judge noted that by the end of the trial there had been corroboration of Macchia's testimony to some degree. In addition, the court ruled that other grounds, including the refusal to allow defendants to take the deposition of David Cardonick, were without merit.

Cardonick, the real force behind the Arrow Company, was another principal figure in the check-cashing scheme. He founded the Arrow Company and later brought Macchia into it. After being convicted in a state court for cigarette tax violations, Cardonick fled to Spain on April 22, 1972 and was still there when this case was first listed for trial.

Six days before the scheduled trial date, the defendants presented a petition to authorize Cardonick's deposition in Spain. Attached to the petition was Cardonick's affidavit asserting that he had come upon "a political deal" to make money by purchasing stolen welfare checks and that the owners of JATO had no knowledge that some of the checks they cashed had been obtained through this "political deal." The petition asserted that Cardonick refused to return from Spain but that he was willing to be deposed there. In response, the prosecutor asked that if a deposition were ordered, the case be continued for a week.

The district judge denied the petition, partially on the basis of the imminence of trial, but primarily because the witness was a fugitive. No renewed motion for the deposition was presented between the first and second trials.

After the filing of this appeal, Cardonick returned to the United States to serve his state sentence, and the defendants promptly filed a motion for a new trial based on newly discovered evidence. They submitted an affidavit from Cardonick stating that he had returned to help the defendants who, in his opinion, had been wrongfully convicted. The affidavit set out in some detail the operation of the check-cashing scheme and repeated that the defendants had no knowledge that some of the checks had been stolen. After argument, the court denied the petition, concluding that the defendants had failed to meet the requirements set out in *United States v. Iannelli*, 528 F.2d 1290 (3d Cir. 1976), for the grant of a new trial based on newly discovered evidence.

We turn first to the district court's refusal to permit the deposition of Cardonick. Although untimeliness of the request was undoubtedly a factor in the denial, it seems that the overriding consideration was that Cardonick was then a fugitive. Defense counsel's belief that it would be futile to reapply before the second trial appears reasonable under these circumstances and we accept counsel's representation to that effect.

Federal Rule of Criminal Procedure 15(a) provides that in exceptional circumstances the court may upon motion order that a deposition of a prospective witness be taken when it is in the interest of justice to do so.[1] Attendance of witnesses at trial, however, is the favored method of presenting testimony, and primarily for this reason depositions are not favored in criminal cases. The antipathy to depositions is due in large part to the desirability of having the factfinder observe witness demeanor. Although this concern has been alleviated to a marked degree by the advent of modern audio-visual technology, the policy in favor of having the witness personally present persists. Rule 15 entrusts broad discretion to the trial judge, but if in its exercise a ruling is based upon an erroneous

---

1. Fed.R.Crim.P. 15(a) states in pertinent part: "Whenever due to exceptional circumstances of the case it is in the interest of justice that the testimony of a prospective witness of a party be taken and preserved for use at trial, the court may upon motion of such party and notice to the parties order that the testimony of such witness be taken by deposition and that any designated book, paper, document, record, recording, or other material not privileged, be produced at the same time and place. . . ."

legal premise, the scope of our review is expanded. *Fuentes v. Reilly*, 590 F.2d 509, 513–14 (3d Cir. 1979).

■ When the petition for deposition was presented to the court, Cardonick was in a country that had refused to extradite him because the offense for which he had been convicted did not come within the applicable extradition treaty. At that time, therefore, it was doubtful that he would return to the United States for the trial. His affidavit established that his testimony was relevant and, if believed, would have been exculpatory to some extent. A sufficient showing, therefore, had been made to justify the taking of a deposition.

In his bench opinion, the trial judge cited *United States v. Murray*, 492 F.2d 178 (9th Cir. 1973), *cert. denied*, 419 U.S. 854, 95 S.Ct. 98, 42 L.Ed.2d 87 (1974), and since it was the most recent and pertinent appellate authority, understandably felt persuaded by it. In *Murray*, the court of appeals noted that bench warrants were outstanding against the witnesses who were to be deposed, but that they could not be served in Mexico. With cursory reference to three cases, the court said, "[i]t has been held that to allow the testimony of fugitives to be taken by deposition would amount to an injustice." 492 F.2d at 195.

We think, however, that *Murray* failed to consider the continuing tendency to discard common-law restrictions on competency of witnesses in favor of submission of available evidence to the factfinder for its evaluation. *See* Fed.R.Evid. 601. The cases on which *Murray* rested are lacking in any persuasive reasoning on the competency issue. The first, *United States v. Kelly*, 349 F.2d 720, 769 (2d Cir. 1965), *cert. denied*, 384 U.S. 947, 86 S.Ct. 1467, 16 L.Ed.2d 544 (1966), does not clearly explain why the deposition was denied. The second case, *United States v. Rosenstein*, 303 F.Supp. 210, 212 (S.D.N.Y.1969), *aff'd*, 474 F.2d 705 (2d Cir. 1973), in turn relied upon the third, *United States v. Van Allen*, 28 F.R.D. 329, 346 (S.D.N.Y.1961), where the court in *ipse dixit* said to allow a fugitive's deposition would be an injustice.

Neither *Murray* nor its cited cases discuss the rationale for their rulings but it may be speculated that underlying them was the apprehension of perjury and inability to punish the offense. That apparently was the impression the district judge derived here from his review of the opinions and we are inclined to agree with his interpretation. *Murray* and the other cases, however, did not come to grips with *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), and *Rosen v. United States*, 245 U.S. 467, 38 S.Ct. 148, 62 L.Ed. 406 (1918).

In *Washington v. Texas, supra*, the Supreme Court discussed the demise of the common-law rule making parties incompetent to testify because of fear they might lie, and said it is

" 'the conviction of our time that the truth is more likely to be arrived at by hearing the testimony of all persons of competent understanding who may seem to have knowledge of the facts involved in a case, leaving the credit and weight of such testimony to be determined by the jury or by the court . . . .' *Rosen v. United States*, 245 U.S. 467, 471." 388 U.S. at 22, 87 S.Ct. 1920, 1925.

The *Washington* Court struck down a statute prohibiting a codefendant from testifying for another defendant. Earlier, in *Rosen*, the Court had refused to enforce a statute which made a person convicted of forgery incompetent as a witness.

■ In our view, there is no more reason to prohibit a fugitive from testifying than there would be to refuse evidence from a codefendant. To the extent, then, that *Murray* rests upon a finding of incompetency solely because the witness is a fugitive, we decline to follow it.

Hindsight provides another reason for our conclusion that the deposition should have been permitted here. A trial judge's determinations, though correct at the time when made, may be reversed because of changes in the law occurring thereafter, and, similarly, events that develop later may cast a different light on an earlier ruling. Though such circumstances may

prompt a reversal by an appellate court, they obviously were not known to the trial judge when he made his ruling.

As we noted earlier, the conscientious district judge was greatly troubled by the questionable credibility of the government's crucial witness, Macchia. To some extent, this witness's testimony was bolstered by a government handwriting expert who testified that defendant MacGregor forged some of the signatures on the stolen checks. But even the corroboration was contested when the defendants' expert challenged the opinion of the government's witness. The jury, of course, was free to resolve the conflict in favor of the government and find support for Macchia's testimony, and as the trial judge properly recognized, the jury ultimately must make the judgment of credibility. *United States v. Cravero*, 530 F.2d 666, 670 (5th Cir. 1976). But because without Macchia's testimony the prosecution had no case, the cloud over his credibility was particularly significant and Cardonick's potential testimony assumes increased importance.

We recognize that the realities of criminal prosecution often compel the government to present witnesses who have participated in the same illegal transactions for which others are standing trial. The charge to the jury on accomplice testimony is clear recognition of the careful scrutiny to be given such evidence. There is no indication in the record that Cardonick's credibility is any stronger than Macchia's, and it may well be that a jury will not accept his exculpation of the defendants. Nevertheless, when the government's case rests upon the questionable testimony of one accomplice, there is much to be said for presenting all of the suspect evidence to the jury, thus facilitating its ability to cull the truth from doubtful sources. At the very least, there will be greater satisfaction with a verdict which has been reached after a complete development of the controversial evidence.

The trial judge could not have known of Macchia's suspect credibility when he refused to permit the deposition but, as events developed, it is clear that permitting Cardonick to give his version of the defendants' activities would have precluded any doubt that his absence might have affected the result in the case. Under all the circumstances, therefore, we conclude that a new trial should be granted.

■ Since the matter will have to be tried again, we comment on some of the defendants' other contentions. Because the revenue agent testified to computations based upon differing interpretations of Macchia's testimony, the defendants assert the summaries that the prosecution prepared should not have been admitted into evidence. We do not agree. Any one of the calculations would support conviction, and it was for the jury to determine if there was credible evidence to support any of them. Resolution of these factual considerations was a matter for the jurors and it was not err to allow them to choose among options depending upon which version of the testimony was accepted.

■ Because the defendants were indicted for preparing false returns, it was not necessary that the government prove the exact amounts of unreported income by the defendants. *See United States v. Johnson*, 319 U.S. 503, 517–18, 63 S.Ct. 1233, 87 L.Ed. 1546 (1943). It is enough if the prosecution shows that a substantial amount of income was not reported. In a case of this nature, the government is not required to prove the exact amount alleged in the indictment, *United States v. Warden*, 545 F.2d 32, 36 (7th Cir. 1976). All of the computations submitted by the revenue agent reflected substantial amounts and hence were adequate for conviction.

Defendants also complain that there was insufficient evidence of mailing. We find no merit to this contention.

The judgments of conviction are vacated, the order denying the motion for new trial is reversed, and a new trial will be granted.