**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Therese Ann COUPEZ, Defendant-Appellant.**

No. 78–2772.

United States Court of Appeals, Ninth Circuit.

Sept. 12, 1979.

Therese Ann Coupez, in pro per.

Gerald E. Olson, Asst. U. S. Atty., Seattle, Wash., for plaintiff-appellee.

Before HUFSTEDLER and ANDERSON, Circuit Judges, and EAST,* District Judge.

EAST, District Judge:

*INDICTMENT AND CONVICTIONS:*

Therese Ann Coupez (Coupez), John Sherman, and Janine Bertram[1] were each charged in a nine count indictment with conspiring to rob banks, make firearms, and bomb real and personal property and the substantive counts of robbery of four national banks and bombing of various build-

---

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

1. Bertram entered a plea of guilty prior to trial.

ings, vehicles, and other real and personal properties, in violation of 18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 2113 (bank robbery), and various other proscribed crimes.[2]

Following a three week jury trial, Coupez and Sherman were each found guilty of the crimes as charged in Counts I through VIII. Throughout the trial, Coupez and Sherman proceeded *pro se* with separate court appointed attorney-advisors.

*APPEAL*:

Coupez and Sherman have separately appealed.[3] Coupez appears *pro se* and *in forma pauperis* with a court appointed attorney-advisor other than her trial attorney-advisor. We affirm.

*FACTS*:

Coupez and her co-defendants belonged to a group known as the "George Jackson Brigade." Coupez stated that she joined the Brigade in late 1975 and participated in numerous bombings, attempted bombings, and robberies in the Seattle area between January, 1976 and March, 1978. Testimony also established that Coupez and Sherman planned and participated in several armed bank robberies in Oregon. Physical evidence found by the Federal Bureau of Investigation further linked Coupez to the various robberies and bombings.

*DISTRICT COURT PROCEEDINGS*:

Coupez and her two co-defendants were duly arraigned and all had appointed attorneys representing them. The defendants filed motions to have all of them held in the same jail and to have weekly joint meetings with all defendants with counsel participating. The meetings were allegedly needed in order to properly and adequately prepare the defense. The Government responded by noting the high security risk and the fact that each attorney had access to his client and to the other attorneys. At a hearing two days later, the Magistrate denied the motion to have all three defendants held in the same jail, but ordered joint meetings to be held once every two weeks for a period of three hours. Motions for more meetings were repeatedly renewed, with counsel alleging that due to the unusual political nature of the defense and their unfamiliarity with it, frequent joint meetings were necessary. These further motions were also denied.

Thereafter Coupez moved for self-representation as to "some of the charges." The motion was supplemented as to the other defendants, each requesting self-representation (with attorney-advisors) on two of the nine counts. The Government did not completely oppose what it characterized as "hybrid" representation, but suggested certain limits, aimed primarily at preventing the defendants and their counsel from both making opening and closing statements and examining witnesses. At a hearing on the motion on May 2, 1978, the Magistrate, while recognizing the right of self-representation, stated that the Court may impose reasonable conditions upon the exercise of that right. As the Magistrate found that the "arrangement requested by defendants would result in procedural problems likely to render the trial confused, chaotic and virtually unmanageable," he offered three options:

"(1) To be tried with appointed counsel on all counts;

"(2) To represent himself or herself on all counts, with or without an attorney advisor, at the defendant's choice; or

"(3) To represent himself or herself on two counts only, with or without an attorney advisor on those counts, and to be represented by appointed counsel on the other seven counts. This option, however, is subject to compliance with three conditions:

---

**2.** The District Court dismissed the charges under Count 9 prior to the submission of the cause to the jury.

**3.** This Court has granted Sherman's motion to dismiss his appeal.

"(a) Defendant, or counsel, but not both, must conduct the voir dire of prospective jurors, make the opening statement, and closing argument. Defendant could conduct one or more of these proceedings, while counsel conducts others.

"(b) Defendant, or counsel, but not both, must examine each witness, and present any objections during the testimony of each witness. Defendant could handle some witnesses, and counsel handle others.

"(c) If defendant chooses to testify, his or her direct examination would be in response to questions propounded by counsel."

Each of the defendants flatly rejected each of the options and the Magistrate denied the motions. Coupez' motion for reconsideration was denied by the Magistrate, which the District Court affirmed.[4]

Sherman's counsel moved for a continuance of the pretrial proceeding on the basis of, *inter alia*, the complexity of the multi-defendant case, the need for more joint meetings, and an inability to contact all witnesses. The motion was denied. Later that day, both Sherman and Coupez dismissed their attorneys, believing them to be unable to adequately represent their defenses, and elected to proceed entirely *pro se*. The District Court granted the *pro se* status and appointed their former counsel as attorney-advisors. Two later motions for a continuance were also denied.

A pretrial conference was held on June 19 and 20, 1978. Along with other matters discussed, the Court ruled that the defendant's justification defense,[5] based on representations made, would not be allowed.

A motion for out-of-state subpoenas and a motion for a continuance were also denied.

*ISSUES*:

1. Whether Coupez was allowed adequate time and opportunity to prepare a defense and whether she was denied effective assistance of counsel.

2. Whether Coupez was denied the right of self-representation.

3. Whether the proffered "justification defense" was proper.

4. Whether the District Court's instruction that the jury must accept the law as stated by the Court was in error.

*DISCUSSION*:

*Issue 1*:

■ The Sixth Amendment guarantees the right to assistance of counsel, and requires reasonably competent and effective representation. *Cooper v. Fitzharris*, 586 F.2d 1325 (9th Cir. 1978). However, *Cooper* requires that a showing of a lack of effective representation must be coupled with a factual showing of actual prejudice to a defendant's defense because of such defective representation.

Coupez was represented by appointed counsel from prior to March 30, 1978, when she was arraigned, until she requested to represent herself on June 15, 1978, six days before the start of the trial. The same attorney who had represented her continued as her court appointed attorney-advisor.

■ We have reviewed the record and are satisfied the alternatives offered by the Magistrate in answer to Coupez' motion for split self and attorney representation were reasonable to assure a manageable and decorous proceeding and yet give Coupez a full,

---

4. Coupez sought from this Court a writ of mandamus directing the District Court to vacate its order of June 6, 1978, adopting the Magistrate's denial of self-representation as to the selected counts. Heretofore no action has been taken by this Court on Coupez' petition. The merits of that petition are resolved adversely to Coupez in this memorandum.

5. The justification defense has been defined as the situation in which a "defendant is faced with committing the act which normally constitutes a crime or an alternative act which represents a greater evil." *United States v. Micklus*, 581 F.2d 612, 615 (7th Cir. 1978).

fair trial. We do not agree that the restrictions on the joint conferences or the denial of the continuances were unreasonable nor did the restrictions deny Coupez an adequate opportunity to fully discuss and prepare her defense. "The decision to grant or deny a requested continuance is within the trial court's discretion and will not be disturbed on appeal absent clear abuse of that discretion." (Citations omitted). *United States v. Hoyos*, 573 F.2d 1111, 1114 (9th Cir. 1978). Additionally, decisions as to the time, place, and number of the joint conferences were, in part, dictated by valid security considerations. We find no such abuse by the District Court.

Furthermore, the record is devoid of any factual showing of prejudice to Coupez' defense by reason of the District Court's rulings.

*Issue 2 :*

 A correlated right found in the Sixth Amendment is the right to self-representation if a defendant voluntarily and intelligently makes that choice. 28 U.S.C. § 1654. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *United States v. Dujanovic*, 486 F.2d 182, 185 (9th Cir. 1973). Reasonable limitations may be placed on the exercise of the right, however, as it cannot be used to subvert the trial or to effect other dilatory purposes. Additionally, the Court has discretion in a *pro se* proceeding to appoint a "standby" counsel to merely advise or to give the accused meaningful technical assistance in presentation of the defense and the saving of the record for appeal.[6]

Coupez raises a unique issue. In one breath, she claims that she was denied reasonable effective legal representation in the development and presentation of her defense. In the next breath, she claims she was denied self-representation on two of

the nine counts, unlike the usual situation in which a defendant either wishes legal representation or self-representation on the entire case.

 The options given Coupez by the Magistrate as to self and counsel representation were more than Coupez' situation deserved, yet explicit, reasonable, and fair in meeting the requirements of the Sixth Amendment. The record shows Coupez' voluntary and intelligent election of self-representation as to all counts. The appointment of the attorney-advisor in no way prejudiced Coupez' defense and was a valid discretionary act on the part of the District Court.

Coupez lastly asserts that restrictions on the exercise of self-representation are not justified by the mere possibility of disruption with no showing of such. Her reliance upon *United States v. Dougherty*, 154 U.S. App.D.C. 76, 473 F.2d 1113 (1972), is misplaced. The *Dougherty* court, as were the Magistrate and District Court here, was addressing the fact that given the general likelihood that *pro se* defendants have only a basic understanding of the rules of evidence and courtroom procedure, a measure of confusion and delay is likely, perhaps inevitable. *Id.* 154 U.S.App.D.C. at 87–89, at 1124–26. *See Badger v. Cardwell*, 587 F.2d 968, 979 (9th Cir. 1978).

*Issue 3 :*

"[The justification defense] is said to be available when the actor is faced with a choice of two evils and finds himself in a position where he may 'either do something which violates the literal terms of the criminal law and thus produce some harm or not do it and so produce a greater harm.' LaFave and Scott, *Handbook on Criminal Law* (1972) § 50, page 387. Thus it is asserted that society will benefit from the greater good that is accom-

6. Coupez' contention that she was denied the right to represent herself on two of the nine counts because of the Government's discretionary decision to try all nine counts together instead of separately, which would have given her the right to choose or reject representation on each count, is without merit. The Government may choose the alleged counts in a single indictment without initial judicial interference.

plished by the violation of the literal language of the law. *United States v. Simpson,* 460 F.2d 515, 517–18 (9th Cir. 1972)." *United States v. Richardson,* 588 F.2d 1235, 1239 (9th Cir. 1978), *cert. denied,* 440 U.S. 947, 99 S.Ct. 1426, 59 L.Ed.2d 636 (1979).

*Richardson* dealt with a prosecution for smuggling Laetrile into the United States. The defendants contended that it was needed in the States to treat cancer patients. This Court noted that the defense "requires that optional courses of action appear unavailable," and the "obvious optional course of action was to take steps to render the 'necessary' action legal—to pursue . . ." relief from Congress. *Id.* at 1239.

█ In *Simpson,* 460 F.2d 515, this Court rejected the justification defense proffered by a defendant who burned records of a local draft board in an attempt to move the Government to end the war in Vietnam. What this Court said there is equally applicable here:

"Here, it is apparent that Simpson's reckless, dangerous acts were not reasonable. An essential element of the so-called justification defenses is that a direct causal relationship be reasonably anticipated to exist between the defender's action and the avoidance of harm. . . . It was unreasonable for Simpson to assume that any violent action he initiated might have any significant effect upon the supposed ills that he hoped to remedy." *Id.* at 518.

Hence, Coupez' attempts to show that a significant harm was occurring, namely, certain crimes committed by the capitalist socio-economic system in the United States; that this harm was significantly greater than the harm from the defendant's ac-

tions; and that their actions were reasonably designed to prevent that harm, were properly rejected by the District Court.[7]

*Issue 4:*

Coupez in her closing argument to the jury stated:

"Once you are in the jury room, you're the sole judges of the evidence, of which evidence that you'll consider, if any at all. While the Court will instruct you that it's your duty to follow the law, they will not instruct you that you are bound to follow the law because, in fact, you do have a right to make a decision based on your own convictions and regardless of the law."

The District Court instructed the jury:

"It is your duty to accept the law as the Court states it to you. You should consider all the instructions as a whole. You may not disregard any instruction or give special attention to any one instruction, or question the wisdom of any rule of law."

█ The District Court's instructions as a whole were fair and sound at law and not erroneous in the specific challenged instruction. In *United States v. Dellinger,* 472 F.2d 340 (7th Cir. 1972), *cert. denied,* 410 U.S. 970, 93 S.Ct. 1443, 35 L.Ed.2d 706 (1973), is the sage statement at page 408:

"As said by the first circuit in a criminal case, 'Today jurors may have the power to ignore the law, but their duty is to apply the law as interpreted by the court, and they should be so instructed.'"

The District Court's judgment of conviction and sentence entered August 3, 1978, is affirmed.

AFFIRMED.

---

7. Coupez has presented this Court with an extended and readable Appendix A wherein she succinctly explains her anti-establishment views. She states:

"It is necessary to examine the organization of capitalist economy in order to understand that the crimes and harms caused by capitalism are an integral part of the character of capitalist production—not reformable mistakes—and that therefore eliminating capitalism and replacing it with an entirely new system of organization is the only way to put an end to the crimes and harms capitalism causes."

Coupez' views are respected as free speech, but her actions in furtherance of those views were in violation of the law as enacted by Congress and enforced by the Executive.