**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Silbert MILLS, Defendant-Appellant.**

No. 83–3662.

United States Court of Appeals, Eleventh Circuit.

May 20, 1985.

than formal pleadings drafted by lawyers. *Woodall v. Foti, supra,* 648 F.2d at 271.

William W. Montjoy, Tallahassee, Fla., for defendant-appellant.

Lyndia P. Kent, Asst. U.S. Atty., W. Thomas Dillard, Tallahassee, Fla., for plaintiff-appellee.

Before RONEY and CLARK, Circuit Judges, and SIMPSON, Senior Circuit Judge.

SIMPSON, Senior Circuit Judge:

Silbert Mills, a Bahamian customs officer stationed at Marsh Harbour, Great Abaco Island, in the Bahamas, was indicted and tried in the Northern District of Florida for his aid to smugglers transporting marijuana from Jamaica to Gainesville, Florida. A jury convicted him of conspiracy to import marijuana, 21 U.S.C. §§ 952(a), 963; conspiracy to possess marijuana with intent to distribute it, 21 U.S.C. §§ 841, 846; and possession of marijuana with the intent to distribute it, 21 U.S.C. § 841, 18 U.S.C. § 2.[1]

The court set a sentencing hearing two months and two days from the date of the verdict. Neither of Mills' two attorneys appeared. Consequently, the court appointed new counsel and rescheduled the hearing. Mills then filed a motion for new

---

1. The grand jury indicted Mills on three counts of possession with each count alleging possession on a separate date: July 20, 1981 (count 3); October 8, 1981 (count 4); and November 29, 1981 (count 5). The court acquitted him of counts three and four. He was convicted on the last count.

trial, Fed.R.Crim.P. 33, which alleged that the two trial attorneys John V. Russell and Charles Rich, had rendered ineffective assistance before and at trial. After an evidentiary hearing, on the ineffective assistance issue, the district judge denied the motion for new trial and imposed sentences which included imprisonment, fines and a special parole term authorized by 18 U.S.C. § 4205(b)(2).

Mills appeals his conviction arguing that the district court committed reversible error in refusing to allow him to depose an unarrested Bahamian co-defendant and again arguing that he received ineffective assistance. For reasons stated below, we remand these issues for further action by the district court. We must adjudicate a third argument challenging the sufficiency of the evidence to support the verdict in order to assure that our order of remand does not violate the double jeopardy prohibition of the Fifth Amendment. *United States v. Palzer*, 745 F.2d 1350, 1352 (11th Cir.1984).

In reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the government and make all reasonable inferences and credibility choices in favor of the verdict. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Gold*, 743 F.2d 800, 824 (11th Cir.1984). If a reasonable jury could find that the evidence, viewed by this standard, proved the defendant's guilt beyond a reasonable doubt, we must sustain the verdict. *United States v. Payne*, 750 F.2d 844, 855–56 (11th Cir.1985).

The government's case against Mills hinged upon the testimony of three convicted drug smugglers who regularly imported marijuana from Jamaica to Gainesville. Raymond Ross, Jr., the head of the operation, testified that he met "Sali" Mills while going through a customs check at the Marsh Harbour airport. The time of this meeting does not appear in the record. He had regularly traveled through that entry point and had shown the officials there a voter's registration card as proof of his United States citizenship. Shortly thereafter, Ross told Mills that he was a smuggler who was looking for refueling stops in the Bahamas. Mills replied that arrangements could be made but Ross would have to pay to "play on his turf." Ross then gave Mills a thousand dollar gratuity "to be used to come in and out without any hassel." In November, 1981, Ross returned to Marsh Harbour and inquired about using the airport for unloading and refueling. Mills told Ross that Cay Russell[2] would show him an abandoned airstrip which was well surfaced and unmanned by government agents and which had been used safely in the past by other smugglers. When Ross and Cay were unable to locate the airstrip, Mills, who was a pilot, took them for a flight and identified the location from the air. Ross then advised Mills that he would use the airstrip a few days later. Within a week, an airplane loaded with three hundred and eighteen pounds of high grade marijuana landed at the airstrip. The marijuana was unloaded by Ross, Dale Turner and others and transported by Cay Russell to a house which Ross had paid Cay Russell to rent. Sometime later, the airplane was refueled, reloaded and flown by Dale Turner to Gainesville. There, the marijuana was unloaded at the direction of Joseph Brunke and distributed to wholesale purchasers.

Dale Turner testified that in late November, 1981, he flew an airplane from Fort Lauderdale, Florida to Marsh Harbour. There, "Sali" Mills, in his capacity as a customs officer, asked him some routine questions. When Turner mentioned Cay Russell and Raymond Ross, Mills responded by showing him a piece of paper with Ross's name and other information written

2. Cay Russell's name is spelled many ways in the various parts of the record, (e.g. "Kye", "Cai", "Kai"). An audiotaped interview in the files submitted as an exhibit at the hearing on Mills' motion for a new trial reveals that Cay Russell spells his name, "C–A–Y." See note 7, *infra.* We have adopted this spelling and use the full name to avoid confusing Cay Russell with defense attorney John V. Russell.

on it. The two men left the customs office and discussed the load of marijuana Turner intended to transport. Mills gave Turner directions for receiving landing instructions by radio from Ross and informed him that as long as he was paid for the use of his facilities there would be no problem. Cay Russell transported Ross and Turner to a house where they rested and examined the marijuana. Sometime later, Turner flew the reloaded airplane to Gainesville.

Joseph Michael Brunke testified that Ross hired him on a commission basis, to unload marijuana and find buyers for it. In November of 1981, an airplane loaded with marijuana and flown by Turner landed in Gainesville. Shortly after Brunke and his crew unloaded the marijuana, "people arrived to take it away."

The government's fourth witness, Drug Enforcement Administration agent Gerald Carr, investigated the case after Ross had been arrested and agreed to cooperate. Carr testified that he, Ross and an undercover Bahamian police officer flew to Marsh Harbour and attempted to buy some marijuana from Cay Russell. Mills was on duty when they landed. Ross informed Mills that the airplane had no passenger seats and inquired whether its suspicious appearance would pose any problems. Mills expressed no concern and discussed the location and quantity of the marijuana with Cay Russell and the prospective purchasers. Cay Russell took the agents to a nearby house and showed them the marijuana, however, they were unable to complete a sale. Carr later checked telephone toll records and confirmed that certain telephone calls in which Ross and Cay Russell had arranged the marijuana purchase had been received at the customs office where Mills worked.

[1, 2] Mills admits that the evidence supports a finding that he knowingly conspired with United States citizens and residents to violate the laws of the Bahamas by ignoring illegal activities in Marsh Harbour. He argues, however, that his convictions for violating the laws of the United States must fall because there is no proof

that he knew that the United States, specifically the Northern District of Florida, was the target of the conspiracy and no proof that he had possession of any marijuana. We disagree.

> To establish the existence of a drug conspiracy, the government must prove an agreement by two or more persons to violate the narcotics laws.... The existence of a conspiratorial agreement may be established through circumstantial evidence, such as inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme.... Proof is not required that the defendant had knowledge of all the details of the conspiracy; the defendant need only have knowledge of the essential objective of the conspiracy.

*United States v. Elledge,* 723 F.2d 864, 865–66 (11th Cir.1984) (citations and quotation marks omitted).

The circumstantial evidence presented below is sufficient to establish that Mills knew that Ross, Turner and their cohorts intended to import marijuana into the United States and possess and distribute it there. As a customs agent, Mills knew that the smugglers were United States citizens and residents from his examination of their voter's registration cards. He had made arrests of smugglers in the Bahamas out islands, an area that Ross testified was a haven for smugglers seeking entry from Jamaica into the United States. It may be inferred, therefore, that he had some knowledge of the patterns of drug traffic. As a pilot, Mills was familiar with aircraft. He was aware of the proximity of the United States and was informed that Ross desired to refuel his small, marijuana-laden aircraft on a return flight from Jamaica. A reasonable jury could infer from this evidence, beyond a reasonable doubt, that Mills knew that the marijuana would be flown into the United States. Further, both venue and the substantive crime of possession may be proved and were proven by his co-conspirator's overt acts of possession which were committed in the Northern District of Florida in furtherance of the

conspiracy. *United States v. Loyd,* 743 F.2d 1555, 1561 (11th Cir.1984); *United States v. Barnes* 681 F.2d 717, 722 (11th Cir.1982). Accordingly, we find the evidence sufficient to support his conviction on all counts.[3]

 Mills' arguments addressing the fairness of the process by which he was convicted gives us more concern. The first is that the court erred in refusing to allow him to obtain, and introduce at trial, the videotaped deposition of the exculpatory testimony of Cay Russell. The pertinent parts of the court's order reveal that Mills' motion was denied solely because Cay Russell was a fugitive defendant:[4]

> Defendant ... desires to depose Cai Russell, an indicted co-conspirator, who currently resides in the Bahamas and has to date, avoided prosecution. The defendant offered to the court and the Government a videotaped interview with Cai Russell which the Court has not yet viewed. Even assuming *arguendo,* that the videotape meets the requirements of Rules 15(a), F.R.Crim.P. and 803, F.R. Evi., it is the opinion of the court that it would be highly improper to permit Cai Russell to testify, via deposition, at the very proceedings for which he is under indictment. Recognizing that there is a split in authority among the federal courts as to the propriety of defendant's request, this court adopts the reasoning of the Ninth Circuit Court of Appeals in *United States v. Murray,* 492 F.2d 178

(9th Cir.1973), *cert. denied,* 419 U.S. 854, 95 S.Ct. 98, 42 L.Ed.2d 87 (1974) and *United States v. Richardson,* 588 F.2d 1235 (9th Cir.1978). To allow the testimony of this co-defendant fugitive to be taken by deposition would amount to an injustice.

The decision whether to authorize depositions pursuant to Fed.R.Crim.P. 15 is committed to the discretion of the trial judge. *United States v. Bello,* 532 F.2d 422, 423 (5th Cir.1976). We believe that the district judge failed to exercise that discretion by adopting an absolute rule that the deposition of a fugitive would be an "injustice." The Third Circuit in *United States v. Wilson,* 601 F.2d 95 (3d Cir.1973) carefully analysed *United States v. Murray,*[5] the primary authority cited by the district court and found its holding pure *ipse dixit,* unsupported by reason or any of the Second Circuit cases. *U.S. v. Wilson,* 601 F.2d at 97. The court speculated that the underlying rationale for the *Murray* prohibition "was the apprehension of perjury and the inability to punish the offense" and held that a ruling based solely upon those considerations is contrary to the principle that " 'all persons of competent understanding who seem to have knowledge of the facts' " should be allowed to testify and questions of the credibility and weight to be given their testimony should be decided by the trier of fact, *Id.* at 97, quoting from *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). The court concluded:

---

**3.** In his discussion of the sufficiency of the evidence Mills argues that the district court committed further error in allowing co-conspirator's statements into evidence in the absence of the predicate required by *United States v. James,* 590 F.2d 575 (5th Cir.) *cert. denied,* 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979) and its progeny, e.g., *United States v. Figueroa,* 720 F.2d 1239 (11th Cir.1983). The government introduced very few co-conspirator's statements into evidence. The existence of conspiracy was amply proven by evidence independent of those statements which were admitted. The court considered the independent evidence and admitted the co-conspirator's statements after correctly determining that the predicate had been properly proven. There is no merit to this argument.

**4.** The evidence shows that Cay Russell committed his crimes in the Bahamas, a country where he resides and maintains citizenship. Many would quarrel that Cay Russell cannot properly be called a "fugitive" from the justice of the United States courts because he has made no attempt to flee the territorial limits of their jurisdiction. We have used the cases cited in this opinion so describing similar potential deponents. Others employing the term in a similar manner may or may not survive the scrutiny of linguistic authorities.

**5.** 492 F.2d 178 (9th Cir.1973) *cert. denied* 419 U.S. 854, 95 S.Ct. 98, 42 L.Ed.2d 87 (1974).

[T]here is no more reason to prohibit a fugitive from testifying than there would be to refuse evidence from a codefendant.

601 F.2d at 97.

We agree with the Third Circuit's analysis of *Murray* and find no persuasive authority in the second case cited by the district court, *United States v. Richardson.*[6] *Richardson* merely cites *Murray* (and a Second Circuit case misinterpreted in *Murray*) as authority that deposition of a fugitive would be an "injustice." We are further persuaded to reject the *per se* rule the district court adopted from *Murray* and *Richardson* by the fact that the Second Circuit has, *in dicta*, recognized that fugitive depositions are not only available but are sometimes wisely authorized despite their suspect veracity and the lack of a perjury sanction. *United States v. Gonzales*, 488 F.2d 833, 838 (2d Cir.1973).

We cannot find the error harmless on the ground that the evidence of guilt was so overwhelming that exculpatory testimony from a fugitive would have had no impact on the jury verdict. See, *United States v. Bello*, 532 F.2d at 423. The jury might have concluded that Cay Russell's testimony was no more suspect than that of the convicted felons who testified for the government. Nor are we able to determine that the defendant proffered insufficient evidence to justify an order for depositions. The district court's order and the briefs submitted to this court both state that the evidence was submitted in the form of a videotape cassette. No videotape cassette appears in the record, the docket or the hearing minutes.[7] Accordingly, we remand this issue for examination of the evidence supporting the motion and the appropriate exercise of the district court's discretion.

■ We must also remand for rehearing defendant's motion for a new trial. One of Mills' strongest complaints is that his attorneys failed to investigate and present an alibi defense. Mills had two possible alibis each of which was applicable to a separate time period. At his post trial hearing, Mills testified that he was at flight school in Fort Lauderdale, Florida on the November dates he was supposed to have been assisting Ross's smuggling operations. He informed his initial attorney, John V. Russell of the alibi and presented him with a passport, pilot's log book and the names of potential witnesses at the flight school, including a Federal Aviation Administration examiner, who could purportedly affirm his story. Russell admits receiving the passport and log book and also admits that he made no attempt to interview those witnesses. Rich and Russell later decided not to introduce the documents or to call Mills as a witness based in part upon their conclusion that the documents were not convincing and that Mills lacked credibility. The district court acknowledged that, "In some cases counsel's failure to effectively pursue an entire line of defense may ... stamp his overall performance with the mark of ineffectiveness," citing *Stanley v. Zant*, 697 F.2d 955, 958 (11th Cir.1983) *cert. denied* — U.S. ——, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984); but found that "Russell's failure to interview the witness at the flight school to support defendant's alibi claim was a decision made after he reviewed the documents and interviewed other witnesses which (sic) cast doubt on the alibi dates." The court characterized Russell's inaction as a "strategic decision" made after "substantial investigation" and found that it did not deprive Mills of effective assistance. This

---

**6.** 588 F.2d 1235 (9th Cir.1978).

**7.** Certain language in the transcript of the pretrial hearing indicates that the parties may have mistakenly referred to an audio tape submitted in support of the defendant's motion to take videotaped depositions as a "videotape deposition" and that the error once made was aggravated by repetition. An audiotaped interview between John V. Russell and Cay Russell does

appear in the attorney's files which were submitted as a composite exhibit at the post trial hearing. However, there are no indications on the audiotape cassette that it was ever introduced as an exhibit at the pre-trial conference. This problem with the record must be corrected by the trial court. This court cannot speculate what evidence Mills presented in support of his motion.

finding is clearly erroneous. There is no evidence in the record that Russell interviewed any witnesses concerning the November alibi before trial. The evidence does show that Rich and Russell interviewed certain Bahamian witnesses the night after jury selection; however, the record is clear that the Bahamians were questioned about a second alibi for the later July date when Mills was supposed to have participated in Agent Carr's aborted attempt to buy marijuana. Russell stated that he found the documentary evidence of little value as an alibi to the November dates because Marsh Harbour was only an hour flight from the United States and because he did not have a credible witness to corroborate the information in the documents. There is no testimony why he failed to attempt to find such a witness when the evidence shows that he had been given the names and addresses of witnesses who worked in the very town where he practiced law. Moreover, the district court's finding is illogical. Russell could not have made a binding, strategic pre-trial decision based upon information learned *after* jury selection.

The Supreme Court recently described the scope of an attorney's duty to investigate a client's defense and the appropriate standard of review.

> ... [C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

8. We find little merit in Mills' argument before this court that counsel must be presumed ineffective because Rich, the attorney who actually tried the case, had only one day to prepare for trial and because Russell, Mills' initial attorney who conducted the investigation and pre-trial motion practice, was sometimes absent, sometimes intoxicated and at all times unable to assist Rich. We may presume prejudice only if there are circumstances which would make it unlikely that any lawyer could effectively represent Mills after one day of preparation. See,

*Strickland v. Washington* —— U.S. ——, ——, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984). Russell was not proved to have complied with that standard by the evidence which was erroneously interpreted by the district court.

The effectiveness of counsel must be determined from the "totality of the circumstances." *Id.* —— U.S. at ——, at 2069. In this case, the discrepancy between the district court's findings and the evidence presented below is great. We cannot determine whether the "totality of the circumstances" requires or forbids reversal of the district court's ultimate finding that counsel were reasonably effective in representing Mills. Certainly many of the court's credibility choices and conclusions concerning counsels' knowledge of the facts and the reasonableness of their trial decisions were made under a misapprehension of material facts. The extent to which the error affected the court's fact finding process is a matter of speculation for this court. However, the district court, which heard the testimony at trial and the post trial hearing, is in a much better position than is this court to determine how extensively its original findings must be revised as to each issue raised below and, if counsel is then found ineffective, to determine the extent to which the attorneys' errors prejudiced Mills' defense. See, *Washington v. Strickland*, —— U.S. at —— - ——, 104 S.Ct. at 2067–70 (proof of prejudice required for new trial). Accordingly, we remand the motion for new trial to the district court for reconsideration.[8]

For the reasons stated above, we REMAND this case to the district court for action consistent with this opinion.

*United States v. Cronic*, —— U.S. ——, —— - ——, 104 S.Ct. 2039, 2046–50, 80 L.Ed.2d 657 (1984). The district court found that the files Russell provided Rich contained the essential information necessary to try the case. Final evaluation of the effect that Russell's behavior had upon Rich's defense of Mills is properly the province of the district court which may consider the issue on remand. We cannot presume prejudice on the basis of the record now before us.