[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
07/07/99
THOMAS  K. KAHN
CLERK

No.  97-5913

D.C. Docket No. 93-00322-CR

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALCIDES J. RAMOS,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of  Florida

**(July 7, 1999)**

Before COX and HULL, Circuit Judges, and COHILL*, Senior District Judge.

_____

*Honorable Maurice B. Cohill, Jr., Senior U.S. District Judge for the Western
District of Pennsylvania, sitting by designation.

COHILL, Senior District Judge:

This is appellant Alcides Ramos' second appeal arising out of his one-count conviction for possessing cocaine with intent to distribute. The facts are presented in detail in this court's first opinion which followed the district court's refusal to permit Ramos to take a deposition pursuant to Rule 15 of the Federal Rules of Criminal Procedure. See United States v. Ramos, 45 F.3d 1519 (11th Cir. 1995) ("Ramos I").

To summarize, in Ramos I Ramos had argued that the magistrate judge had erred in denying his pretrial motion to depose one Ramon Yepez. Yepez was the individual who actually delivered three sealed boxes of cocaine to Ramos' house a few days before both men were arrested. Immediately after his arrest Yepez was deported to his homeland, Colombia. Ramos' counsel had advised the district court that Yepez had given Ramos' attorney unspecified information exculpating Ramos. Once deported, however, Yepez was beyond the subpoena power of the court, and refused to re-enter the United States in order to testify at Ramos' trial. Even though Ramos' attorney believed he could locate Yepez in Colombia and arrange for the deposition, the magistrate judge refused to permit it.

Ramos I held that the magistrate judge had abused her discretion when she prohibited Ramos from taking Yepez's deposition. Id. at 1293. Since the panel

did not have findings from the district court regarding the content of the proffered testimony, it remanded the case and directed the district court:

> to consider the Rule 15 motion *on the merits*. The district court must permit the defendant to proffer facts establishing that Yepez's testimony will exculpate Ramos. If sufficient grounds are presented, the deposition should be allowed. If the deposition is completed, the district court must determine whether the testimony warrants the granting of a new trial. If not, the conviction stands.

Id. at 1524 (emphasis in original).

On remand, Ramos' counsel filed a detailed proffer and a sworn affidavit by Yepez as to the exculpatory nature of the proposed testimony from Yepez. The district court ordered that the deposition be conducted via simultaneous videoconferencing. Counsel for both the defense and the government were present in Miami, and Yepez appeared in Colombia, in the presence of two Colombian prosecutors.

The deposition reveals that had portions of Yepez's deposition testimony been credible to the jury, it would have corroborated, at least in part, Ramos' principal defense that he did not know what was in the boxes which Yepez had left at his house. Clearly, Yepez's testimony is material, since it bears on Ramos' knowledge of the contents of the sealed boxes.

3

Yepez explained that Ramos and Yepez knew each other on a social basis and that Yepez trusted Ramos. One or two days before he was arrested, Yepez brought the three sealed boxes, later discovered to contain nearly 40 kilograms of cocaine, to Ramos' house. Yepez testified that he got the boxes from a friend named "Tony", who asked Yepez to store the boxes for a few days. Yepez brought the boxes to Ramos' house; he had not asked Ramos in advance for permission to bring the boxes there. He believed that Ramos would do him this favor. Upon arrival Yepez spoke to Mrs. Ramos, who gave him permission to leave the boxes in the Ramos house. Yepez testified that he did not know what was in the boxes, nor had he ever told Ramos or Ramos' wife that the boxes contained drugs. He also denied being involved in any drug activity or drug conspiracy with Ramos. The boxes were sealed when they were discovered by agents at the Ramos residence on the day Ramos was arrested.

Upon remand, the district court, citing United States v. DiBernardo, 880 F.2d 1216, 1225 (11th Cir. 1989), held that in deciding whether a new trial was warranted due to the erroneous denial of the Rule 15 motion, it must apply the standard set forth in Rule 33 of the Federal Rules of Criminal Procedure, which

governs new trials based on newly discovered evidence.[1] The court's instructions in Ramos I caused some understandable confusion in this regard, when the opinion concluded: "The parties on appeal dispute whether the magistrate's error was harmless. . . . If the deposition is completed, the district court must determine whether the testimony warrants the granting of a new trial." Id. at 1524.

The district court then held that a new trial was not warranted because Ramos failed to meet the certain requirements of Rule 33. Even though the district court found that Yepez's testimony was material, exculpatory and admissible, it denied Ramos a new trial and found that Yepez's testimony, at least as to his own (Yepez's) guilt, was not credible, and therefore, that a new trial would not produce a different result. The court also held that the circumstantial evidence was ample and sufficient to support the conviction of Ramos.

---

[1] Under Rule 33, a court may grant a motion for new trial on one of two grounds. First a court may grant a new trial "in the interest of justice" if the motion is filed "within 7 days after verdict or finding of guilty or within such further time as the court may fix during the 7-day period." Fed. R. Crim. P. 33. A district court lacks jurisdiction to grant a new trial using the "in the interest of justice" standard if the underlying motion is filed more than seven days after the verdict.

Second, a court may grant a new trial on the basis of newly discovered evidence. To succeed on a motion for new trial based on newly discovered evidence, the movant must establish that (1) the evidence was discovered after trial, (2) the failure of the defendant to discover the evidence was not due to a lack of due diligence, (3) the evidence is not merely cumulative or impeaching, (4) the evidence is material to issues before the court, and (5) the evidence is such that a new trial would probably produce a different result. United States v. Schlei, 122 F.3d 944, 991 (11th Cir. 1997), cert. denied, 118 S.Ct. 1523 (1998).

Although the directive in <u>Ramos I</u> states that "the district court must determine whether the testimony warrants the granting of a new trial" it was not intended that Rule 33 of the Federal Rules of Criminal Procedure should be applied. Yepez's testimony obviously could not be called "newly discovered" under Rule 33; Ramos always knew the substance of the Yepez testimony and had called it to the attention of the district court, but was denied the opportunity to record that testimony.

Instead, the district court should have applied the harmless error standard of Fed. R. Crim. P. 52. We are guided by the holding in <u>United States v. Mills</u>, 760 F.2d 1116 (11th Cir. 1985), in which a defendant, who was convicted of various drug charges challenged the district court's refusal to allow him to take a videotaped deposition of an unarrested Bahamian co-defendant. In that case, this court applied the harmless error standard, and stated, "[w]e cannot find the error harmless on the ground that the evidence of guilt was so overwhelming that exculpatory testimony from a fugitive would have no impact on the jury verdict." <u>Id</u>. at 1121; <u>see also</u> <u>United States v. Farfan-Carreon</u>, 935 F.2d 678, 680 (5th Cir. 1991) (where the deposition testimony is exculpatory, not cumulative, and the other evidence of guilt is not overwhelming, the erroneous denial of a Rule 15 deposition entitles the defendant to a new trial).

Had the district court applied the harmless error standard, we are confident that it would have concluded, as we do here, that the error was not harmless. Where the excluded testimony relates to the determinative issue of intent, as it does here, "we cannot say that the error was harmless." United States v. Todd, 108 F.3d 1329, 1334 (11th Cir. 1997). Neither can we conclude that the exclusion of the disputed evidence was harmless, since Yepez was the only witness with personal knowledge of whether he told Ramos what was in the boxes. At trial the jury heard testimony that Ramos had willingly invited the agents into his home, volunteered information that a friend had dropped off the boxes, and had directed the agents to the boxes so that they could search them. Had the jury also heard the Yepez deposition, the verdict might have been different.

As Justice Rutledge opined when discussing section 269 of the former Judicial Code,[2] dealing with harmless error:

> But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had

---

[2]     Act of Feb. 26, 1919, Ch. 48, 40 Stat. 1181 (repealed 1948).

> substantial influence.  If so, or if one is left in grave
> doubt, the conviction cannot stand.

Kotteakos v. U.S., 328 U.S. 750, 765 (1946).

Accordingly, we must reverse Ramos' conviction and remand the case to the district court for a new trial.

In the event that Ramos elects not to introduce the Yepez deposition into evidence, however, the original conviction will stand.

**REVERSED** and **REMANDED** for further proceedings consistent with this opinion.