[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 11, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-10500

_____

D. C. Docket No. 07-60153-CR-JIC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KEVIN CHUNG,
SEAN GARRISON,
BOBBY MARTIN,

Defendants-Appellants .

_____

No. 08-14118

_____

D.C. Docket No. 07-60153-CR-JIC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BOBBY MARTIN,

Defendant-Appellant.

_____

No. 08-14447

_____

D.C. Docket No. 07-60153-CR-JIC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KEVIN CHUNG,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(May 11, 2009)

Before BIRCH, DUBINA and WILSON, Circuit Judges.

PER CURIAM:

Appellants Bobby Martin ("Martin"), Sean Garrison ("Garrison"), and Kevin Chung ("Chung"), appeal their convictions on various counts of an eight-count indictment returned by a federal grand jury in the Southern District of Florida. The charges included conspiracy to obstruct, delay, and affect interstate

commerce by means of robbery, in violation of 18 U.S.C. § 1951(a) (Count 1); conspiracy to possess with intent to distribute at least five kilograms of cocaine, in violation of 21 U.S.C. §§ 741(a), 846 (Count 2); attempt to possess with intent to distribute at least five kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a), 846 (Count 3); conspiracy to carry a firearm during and in relation to a crime of violence and during and in relation to a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A), (c)(1)(B), and (o) (Count 4); knowingly carrying a firearm during and in relation to a crime of violence and during and in relation to a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A), (c)(1)(B), and 2 (Count 5); and possession of an unregistered firearm, in violation of 26 U.S.C. §§ 5861(d), 5871 and 18 U.S.C. § 2 (Count 6).

Additionally, the grand jury charged Martin with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count 7), and charged Garrison and Chung with possession of a firearm by an illegal alien, in violation of 18 U.S.C. § 922(g)(5) and 2 (Count 8). In Counts 1, 2, 3, 4, and 8, the grand jury charged a fourth defendant, Dushaunn Morgan ("Morgan"), who is not a party in these consolidated appeals. After trial, a jury convicted Martin on all seven counts against him; convicted Garrison on Counts 1, 2, 3, 4, 5 and 8, but acquitted him on Count 6; convicted Chung on Counts 1, 2, 4, and 8, but acquitted him on Counts 5

3

and 6; and acquitted Morgan on all counts. After the district court pronounced their sentences, all three defendants perfected their appeals.

## I.  BACKGROUND

This case involves a "reverse-sting" investigation during which the defendants planned to rob a cocaine stash house. At trial, the government called as witnesses, Special Agent Steven McKean ("Agent McKean") and Special Agent Pamela Bradley ("Agent Bradley"), both of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). Agent McKean, who was instrumental in running the reverse-sting operation which led to the defendants' arrests, testified about his undercover interactions with the defendants. The government also presented audio and video recordings of Agent McKean's meetings and telephone calls with the defendants and photographs and physical evidence taken on the night of their arrests. Agent Bradley authenticated the seized evidence and photographs and testified regarding the characteristics of the seized firearms.

None of the defendants testified at trial. Through cross-examination of Agent McKean, they attempted to establish that they had been entrapped, and the district court instructed the jury on the entrapment defense. Chung called two witnesses who testified that he had good character and frequently wore black clothing.

## II. ISSUES

The following issues are presented for appellate review:

1. Whether sufficient evidence supported defendants' convictions.

2. Whether the district court abused its discretion by refusing to strike the jury venire, based on a claim that Martin's shackles may have been visible to prospective jurors, and that he was required to remain shackled during trial.

3. Whether the district court abused its discretion by denying Martin's motion for a new trial.

4. Whether the district court abused its discretion by denying Chung's motion for severance.

5. Whether the district court abused its discretion by denying Chung's motion for mistrial.

6. Whether any prosecutorial misconduct occurred and, if so, whether such misconduct prejudiced Martin's substantial rights.

7. Whether the district court erred in its sentencing rulings and whether the defendants' sentences were reasonable.


## III. STANDARDS OF REVIEW

Sufficiency of the evidence is a question of law reviewed *de novo*. *United States v. To*, 144 F.3d 737, 743 (11th Cir. 1998). In reviewing such claims, the court must view all of the evidence in the light most favorable to the government. *Id.*

We review for abuse of discretion a district court's decision to shackle a defendant during trial. *United States v. Mayes*, 158 F.3d 1215, 1219 (11th Cir. 1998).

The district court's denials of motions for a new trial based on newly discovered evidence, for severance, and for a mistrial are all reviewed for abuse of discretion. *United States v. Noriega*, 117 F.3d 1206, 1217 (11th Cir. 1997) (new trial); *United States v. Tapia*, 59 F.3d 1137, 1141 (11th Cir. 1995) (severance); *United States v. Vallejo*, 297 F.3d 1154, 1163 (11th Cir. 2002) (mistrial).

Improper prosecutorial statements are reviewed de novo and require reversal only if the improper statements prejudiced a defendant's substantial rights. *United States v. Delgado*, 56 F.3d 1357, 1365 (11th Cir. 1995).

This court reviews the sentencing court's determination of an aggravating or a mitigating role for clear error. *United States v. De Varon*, 175 F.3d 930, 946 (11th Cir. 1999) (en banc). We review sentences imposed by the district court for

reasonableness.  *Rita v. United States*, 551 U.S. 338, ___, 127 S. Ct. 2456, 2459 (2007); *United States v. Talley*, 431 F.3d 784, 785 (11th Cir. 2005).

## IV.  <u>DISCUSSION</u>

After reviewing the extensive record in this case, reading the parties' briefs, and having the benefit of oral argument, we first conclude that sufficient evidence supported all of the defendants' convictions.  Moreover, statements that the planned robbery targeted Colombian cocaine from a Colombian organization that would courier its cocaine from Florida to Atlanta demonstrated a sufficient potential effect on interstate commerce to satisfy the Hobbs Act.  *United States v. Orisnord*, 483 F.3d 1169, 1177 (11th Cir. 2007), *cert. denied, Polymice v. United States*, 128 S. Ct. 673 (2007).

We next conclude that the district court did not err in denying Martin's Rule 29 motion for judgment of acquittal, and there was sufficient evidence for the jury to reject Martin's entrapment defense.  Entrapment is an affirmative defense, and the defendant has the initial burden of producing evidence of government inducement of the crime.  *United States v. Quinn*, 123 F.3d 1415, 1423 (11th Cir. 1997).  As the district court instructed the jury, once the defendant shows inducement, the burden shifts to the government to prove beyond a reasonable doubt that the defendant was predisposed to commit the crime.  *United States v.*

*Francis*, 131 F.3d 1452, 1455–56 (11th Cir. 1997). Martin did not show "inducement" because the record demonstrates that he agreed to commit a dangerous robbery without hesitation or coaxing from Agent McKean or anyone else. Moreover, the recorded meetings with Agent McKean showed Martin's predisposition to commit the planned robbery.

Furthermore, we conclude from the record that sufficient evidence existed to support Martin's conviction on Count 6. In order to convict Martin of possessing an unregistered firearm, the government needed to demonstrate that Martin knew that the weapon he possessed had characteristics that made it a "firearm" under 26 U.S.C. § 5845(a) – i.e., that the Uzi had a barrel less than sixteen inches. *See United States v. Miller*, 255 F.3d 1282, 1286 (11th Cir. 2001). The government presented enough evidence for a reasonable jury to conclude that Martin knew that the Uzi's barrel measured less than 16 inches. The jury could reasonably find that Martin knew the characteristics of the unregistered Uzi based on his knowledge of the Uzi's source, his role as the robbery's leader, and the obviousness of the Uzi's shortened barrel.

We also conclude from the record that sufficient evidence existed to support Garrison's convictions on Counts 1-5. Garrison's attendance at the meetings on April 13 and June 5, 2007, clothing that he wore on June 5, his possession of a

8

weapon on June 5, and his own statements demonstrated that he knew of, and knowingly agreed to, the stash house robbery plan.

The record also demonstrates that sufficient evidence supported Chung's conviction. Chung's participation on June 5, the clothing that he wore, the use of his car, and his statements demonstrated that he voluntarily joined the robbery plan. Furthermore, Chung had knowledge that the robbery targeted cocaine from statements he heard on June 5.

Next, the district court did not abuse its discretion when it denied Martin's motion to strike the jury venire based on defense counsel's speculation that unidentified potential jurors may have seen Martin's shackles. Defense counsel could not identify any potential juror who he believed saw the shackles. Moreover, of the 22 potential jurors who were seated in a position where the shackles might have been visible, only six served on the jury. The U.S. Marshal, who was standing two feet directly behind defense counsel, also informed the court that he could not see the shackles, that jurors definitely could not see the shackles while Martin was seated, and that jurors would only be able to see the shackles if Martin was standing and the jurors looked directly at the shackles while Martin entered and exited the courtroom. The Marshal added that he had not observed anyone look in that direction all morning. Based on these

9

statements, the district court found no evidence that any jurors had seen the shackles. Even if, however, the denial of Martin's motion was error, that error was harmless given the unlikelihood that any impaneled juror saw the shackles, the district court's frequent instructions on the presumption of innocence, the district court's consistent admonishments to the jury to consider only the evidence presented and to form no opinion concerning guilt or innocence until the close of the evidence.

In our view, the district court did not abuse its discretion by denying Martin's motion for new trial because the "newly discovered evidence" did not conflict with or undermine Agent McKean's testimony and was otherwise immaterial.

> To succeed on a motion for new trial based on newly discovered evidence, the movant must establish that: (1) the evidence was discovered after trial; (2) the failure of the defendant to discover the evidence was not due to a lack of due diligence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material to issues before the court; and (5) the evidence is such that a new trial would probably produce a different result.

*United States v. Ramos*, 179 F.3d 1333, 1336 n.1 (citations omitted). "Motions for a new trial are highly disfavored." *United States v. Jernigan*, 341 F.3d 1273, 1287 (11th Cir. 2003).

We conclude that the district court did not abuse its discretion in denying Martin a new trial based on newly discovered evidence of payments made to the confidential informant ("CI"). The payments were not material because they were made in connection with a completely different investigation pursuant to an agreement made after the CI's involvement and the instant case was complete. Nor did the evidence impugn Agent McKean's credibility; Agent McKean testified truthfully within the context of this case.

Chung's claim that the district court erred in denying his motion to sever is meritless. Chung's pretrial motion to sever was based solely on the theory that introduction of his co-defendants' post-arrest statements into evidence would violate his Sixth Amendment confrontation rights under *Bruton v. United States*, 391 U.S. 123, 127–28, 88 S. Ct. 1620, 1623 (1968) (stating that a non-testifying defendant's post-arrest statement that facially inculpates his co-defendant violates the co-defendant's Sixth Amendment rights). In our view, there was no *Bruton* error because none of the co-defendant's post-arrest statements introduced into evidence implicated Chung. *See United States v. Taylor*, 186 F.3d 1332, 1336 (11th Cir. 1999). Moreover, we deem it significant that the jury's verdicts, acquitting some defendants on some or all counts, demonstrated that the jury was able to evaluate the evidence against each defendant separately.

11

Chung also claims that the district court abused its discretion by denying his motion for mistrial. Under the rule of *Doyle v. Ohio*, 426 U.S. 610, 96 S. Ct. 2240 (1976), the government may not use a defendant's post-*Miranda* silence to impeach him at trial. In deciding whether reversible *Doyle* error has occurred, we consider the extent and frequency to which the government referred to a defendant's silence, whether the reference was used to impeach him, whether a curative instruction was given, and the strength of the evidence against the defendant. *Miller*, 255 F.3d at 1285–86. A prompt curative instruction may cure a *Doyle* error, and a new trial is only warranted if the improper comment was "so pronounced as to permeate the entire atmosphere of the trial and not be cured by an instruction." *United States v. Gabay*, 923 F.2d 1536, 1541 (11th Cir. 1991).

Chung claims two instances of incurable *Doyle* error. Concerning the first claim, the district court agreed with Chung and found that there was a *Doyle* error, but denied Chung's motion for mistrial, after giving a curative instruction. Although we question whether the government's second question even implicated *Doyle*, we nevertheless conclude that the error was harmless because of the second curative instruction given by the district court. Accordingly, we are persuaded that Chung is entitled to no relief on the *Doyle* issue.

12

We conclude from the record that neither Agent McKean's cross-examination testimony nor the government's closing argument, contained improper comments requiring a reversal of the defendant's convictions. Prosecutorial misconduct only merits reversal if the remarks "(1) were improper and (2) prejudiced the defendants'[] substantive rights." *United States v. Delgado*, 56 F.3d 1357, 1368 (11th Cir. 1995).

We conclude from the record that the government did not make any improper statements that prejudiced the defendants' substantial rights. The isolated remarks from the government's closing argument, referring to a statement by Morgan, were inartful responses to the defendants' entrapment theory. Because the defendant most likely to be prejudiced – Morgan – was acquitted on all counts, there is no reasonable probability that the government's remarks, if improper, prejudiced the defendants.

Finally, we conclude that the district court committed no errors in its sentencing rulings. Specifically, the district court did not commit clear error in enhancing Martin's sentence for an aggravating role. See U.S.S.G. § 3B1.1(c). Additionally, the district court properly denied Chung a minor role reduction. We also conclude that the district court's imposition of Martin and Chung's sentences

13

was both procedurally and substantively reasonable given the seriousness of their offenses and the need to deter future violations of the law.

For the foregoing reasons, we affirm the defendants' convictions and sentences.

**AFFIRMED.**