[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-14104
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 30, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-60275-CR-JIC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BRUCE HERMITT BELL,
ANTHONY GEROME BELL,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(October 30, 2009)

Before TJOFLAT, EDMONDSON and HULL, Circuit Judges.

PER CURIAM:

Defendants Bruce Hermitt Bell ("Bruce") and Anthony Gerome Bell ("Anthony") appeal the district court's denial of their motion for a new trial based on newly discovered evidence. After review, we affirm.

## I. BACKGROUND

### A. Investigation and Arrest

Defendants Bruce and Anthony are cousins who were tried together on drug conspiracy charges. Acting on information provided by a confidential informant, the Hollywood Police Department began an investigation focused on Anthony and Bruce and the sale of drugs at an apartment on 6330 Buchanan Street. During the investigation, officers conducted surveillance on the apartment and observed vehicular and pedestrian traffic consistent with street level drug dealing. The officers used a confidential informant to conduct controlled buys of crack cocaine at the apartment. On one occasion, the officers followed Bruce and Anthony from the apartment to a second residence at 6205 Tyler Street, which then also became a focus of the investigation.

Officers executed a search warrant at the Buchanan Street apartment and found defendants Anthony and Bruce inside along with Curtis Vincent Sheffield (Anthony's brother) and Gustavo Fields (a minor). Officers who entered the apartment first saw defendant Bruce grab drugs from a counter top, run to a

bedroom and throw the drugs into a closet. Defendant Anthony also ran to the bedroom. Officers found crack cocaine, scales, a safe and $2,074 in the apartment. Defendant Bruce told officers his name was Brian King, and his wallet contained a driver's license in that name. Defendant Bruce's pocket also contained keys to the Buchanan and Tyler Street properties and the safe at each residence.

In a post-arrest interview at the police station, defendant Bruce admitted converting powder cocaine into crack and selling it. Bruce stated that he rented the 6330 Buchanan Street apartment so he and other members of his drug organization could sell crack. Bruce was going to abandon the Buchanan Street apartment and had rented the Tyler Street address as the new location to sell crack. Defendant Bruce described himself as the main person in the drug organization and an individual named "M" as one of the sources for his cocaine supply. Defendant Bruce signed a consent to search form for the Tyler Street property. A subsequent search of the Tyler Street residence uncovered more crack cocaine, scales, baggies and a safe. Bruce, Anthony and Sheffield were arrested on state charges.

## B.   Trial

Defendants Bruce and Anthony (along with Sheffield) were indicted for conspiracy to possess with intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846, and possession with intent

to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A).  After a federal warrant was issued for Bruce's arrest, a Drug Enforcement Agency ("DEA") agent observed defendant Bruce driving a gold Impala and effected a traffic stop.  A search of the car revealed seven and a half ounces of cocaine in the center console and $6,000 in the trunk.  Bruce admitted that the cocaine was his and that some of the money was drug proceeds.  Bruce also told the DEA agent that he had dropped off approximately two ounces of crack cocaine at the Tyler Street property two days before.  When asked why he became involved with cocaine while charges were pending, Bruce responded that "he had to make the money while he could."

Sheffield pled guilty and appeared as a government witness against defendant Bruce and Anthony at trial.  Sheffield testified, inter alia, that Bruce and "M" managed the drug selling operation, that Sheffield worked for Bruce collecting money from people to whom Bruce delivered crack cocaine and that defendant Anthony (Sheffield's brother) worked for Bruce selling drugs.  The government presented the testimony of the leasing agent for the Tyler Street property and the owner of the Buchanan Street apartment, each of whom identified defendant Bruce as the individual who rented their property.  The government also presented the testimony of several law enforcement officers who participated in the

4

investigation and/or the execution of the search warrant.

The jury convicted defendants Bruce and Anthony on both counts. In July 2005, Bruce was sentenced to life imprisonment and Anthony was sentenced to 360 months' imprisonment. On direct criminal appeal, this Court affirmed Bruce's conviction and sentence and affirmed Anthony's sentence. See United States v. Bell, 218 F. App'x 885 (11th Cir.), cert. denied, 128 S. Ct. 95 (2007).

## C.  Rule 33 Motion for a New Trial

On March 29, 2008, defendant Bruce, on behalf of himself and Anthony, filed a pro se motion for a new trial based on newly discovered evidence pursuant to Federal Rule of Criminal Procedure 33. The defendants' "newly discovered evidence" was: (1) an affidavit from Bruce stating that in September 2005, Bruce asked DEA agent Christopher Boardman why the government had presented false evidence against him and Boardman replied that it was nothing personal and that the Hollywood Police Department had messed up the case and the DEA had to fix it; and (2) an affidavit from Sheffield stating that he lied when he testified at trial against defendants Bruce and Anthony.

Among other things, Sheffield averred that he had not sold drugs for Bruce, but for "M," who was the sole manager of the drug-selling operation. According to Sheffield, he lied at trial because prosecutors and agents insisted that he name

5

Bruce instead of "M." Sheffield also averred that: (1) he, and not Bruce, grabbed the drugs off a counter top and tried to run when officers executed the search warrant at 6330 Buchanan Street; (2) he, and not Bruce, gave the keys to the Buchanan and Tyler street properties and the safes found inside to Detective Kathy Wilde during his interrogation; (3) his friend Matthew, and not Bruce, rented the Buchanan Street apartment; (4) the drugs found in the Impala belonged to Sheffield, and Bruce was unaware the drugs were concealed in the car when he borrowed it; and (5) the prosecutor threatened Sheffield with a long prison sentence if he did not testify as instructed.

The district court held an evidentiary hearing at which Sheffield testified that some of the testimony he gave at trial was false. Sheffield maintained that the government pressured him to testify against defendants Anthony and Bruce and provided him with false information for his testimony. Specifically, Sheffield testified that he was not truthful when he said that Bruce possessed the apartment keys, that Bruce was delivering drugs to dealers throughout Broward County, Florida, and that Sheffield was following Bruce and collecting the money. Instead, "M" ran the drug selling operation, and Sheffield sold drugs for "M," not Bruce. Also, Sheffield claimed that Bruce was unaware of the drugs inside the Impala and that Matthew rented the Buchanan Street apartment.

6

However, Sheffield's hearing testimony was not completely consistent with his affidavit. For instance, Sheffield could not remember who gave the officers the keys to the drug houses and did not know who Detective Kathy Wilde was. When the district court asked Sheffield whether he had reviewed his affidavit, Sheffield said he had. When the district court asked Sheffield if everything in his affidavit was truthful and accurate, Sheffield replied, "No, sir." Sheffield identified as untruthful the portions of his affidavit discussing the drugs found in the Impala and stating that he had given the apartment and safe keys to Kathy Wilde. Sheffield also claimed that he had not sworn that the affidavit was true and that when he signed the affidavit it did not contain the 28 U.S.C. § 1746 certification that the affidavit was true and correct to the best of his knowledge. When the court asked if there was any reason it should believe him now, Sheffield replied, "[n]ot really. I can't give you a reason to believe me if I already lied."

The district court continued the proceedings so that defendant Bruce could get copies of the trial transcripts to assist him in questioning Sheffield. The next day, however, Sheffield apologized to the court for lying on the stand and asked to assert his Fifth Amendment right against self-incrimination. Over Bruce's objection, the district court concluded that Sheffield could invoke his Fifth Amendment right because he admitted giving perjurious testimony, which was a

7

crime.  The district court had Sheffield taken into custody and asked that his probation officer be notified of the alleged violation of his conditions of supervised release.

Several other witnesses testified at the evidentiary hearing.  Florence Bonnie Henley, defendant Bruce's "adopted mom," testified that she was the notary on Sheffield's affidavit and the only thing not on the affidavit when Sheffield signed it was her notary stamp.  Scott Behnke, the prosecutor at the trial, testified that Sheffield's pre-trial statements to him were consistent with the reports he had received from the police department concerning Sheffield's post-arrest statements, and Behnke assumed that Sheffield's trial testimony had been truthful.  Behnke denied threatening Sheffield to testify or providing him with the answers to questions and stated that he told Sheffield to tell the truth on the witness stand.  DEA agent Boardman testified that he never told defendant Bruce that the Hollywood Police messed up the case and that the DEA had to fix it.  Agent Boardman stated that he met defendant Bruce after his federal conviction, and Bruce admitted that he was involved in obtaining the Buchanan Street and Tyler Street residences, he worked in conjunction with "M" in distributing crack cocaine from those residences, and he was planning on purchasing five kilograms of cocaine the night he was arrested.

The district court denied the defendants' motion for a new trial. The district court found that Sheffield's recantation was "totally lacking in credibility" and, in any event, would not produce a different result given the overwhelming evidence of guilt presented at defendant Bruce's and Anthony's trial. This appeal followed.

## II. DISCUSSION

Under Rule 33, a defendant may file a motion for a new trial based on newly discovered evidence within three years after the verdict or finding of guilt, and the court may grant a new trial in the interest of justice. Fed. R. Crim. P. 33(a), (b)(1). To succeed on a motion for new trial based on newly discovered evidence, the movant must show that: "(1) the evidence was discovered after trial, (2) the failure of the defendant to discover the evidence was not due to a lack of due diligence, (3) the evidence is not merely cumulative or impeaching, (4) the evidence is material to issues before the court, and (5) the evidence is such that a new trial would probably produce a different result." United States v. Jernigan, 341 F.3d 1273, 1287 (11th Cir. 2003) (quoting United States v. Ramos, 179 F.3d 1333, 1336 n.1 (11th Cir. 1991)). The failure to satisfy any one of these elements will defeat a motion for a new trial. United States v. Starrett, 55 F.3d 1525, 1554 (11th Cir. 1995). "[M]otions for a new trial are highly disfavored, and . . . district courts should use great caution in granting a new trial motion based on newly discovered

9

evidence." Jernigan, 341 F.3d at 1287 (quotation marks omitted).[1]

Here, the district court did not abuse its discretion in denying the defendants' motion for a new trial. We assume without deciding that the first four prongs of the test set forth above are satisfied, i.e., that Sheffield's recantation was discovered after trial, could not have been discovered earlier with diligence and was non-cumulative and material. Nonetheless, the district court did not abuse its discretion in concluding that it is improbable that Sheffield's recantation would produce a different result.

As the district court found, Sheffield's recantation was not credible. Sheffield stated that he never swore that the affidavit was true, he retracted parts of it during the evidentiary hearing and he admitted that he could not give the court a reason to believe him. There is no evidence, other than Sheffield's questionable affidavit, that the government made any coercive threats to Sheffield to force him to provide false testimony.

More importantly, there was ample evidence at trial, apart from Sheffield's testimony, that defendants Bruce and Anthony were guilty of conspiring to possess, and possessing, crack cocaine with the intent to distribute it. The owner of 6330 Buchanan Street testified that Bruce rented the apartment under the name

---

[1]We review a district court's denial of a motion for a new trial based on newly discovered evidence for abuse of discretion. Jernigan, 341 F.3d at 1287.

10

Brian King, and a driver's license with the name Brian King was found in Bruce's wallet during the search of the Buchanan Street apartment. The property owner further testified that "Brian" told him that an "Anthony Jones" would be around the property to care for it, and the owner later observed suspicious activity around the property that prompted him to call the Tips Hotline. The government also called the leasing agent for the 6205 Tyler Street residence, who identified Bruce as the renter of that property.

Two different officers at the Hollywood Police Department testified that they conducted investigations focused on Bruce and Anthony and the sale of crack cocaine out of 6330 Buchanan Street and that they conducted controlled buys of crack cocaine at the apartment. Defendants Bruce and Anthony were both present the night the search warrant was executed at 6330 Buchanan Street, and officers found several pieces of crack cocaine, a safe, a small scale, and $2,074 in the kitchen, along with crack cocaine in the closet. In addition, an ecstasy pill and crack cocaine were found on defendant Anthony's person. Two officers testified that they saw Bruce grab drugs off the counter and run to the back bedroom, and that Anthony followed him. Officers testified that the keys taken from Bruce's pocket opened the 6205 Tyler Street apartment and a safe found inside the apartment, which contained crack cocaine. Mail addressed to Anthony at 6330

11

Buchanan Street was found at both 6330 Buchanan Street and 6205 Tyler Street.

Detective Wilde testified that Bruce admitted to buying and selling crack cocaine out of 6330 Buchanan Street and 6205 Tyler Street after he was taken into custody. Wilde also testified that Bruce admitted that he rented 6330 Buchanan Street and that he was the main person in the organization. The government introduced a consent form signed by Bruce which stated that he either owned or had control over 6205 Tyler Street and authorized officers to search the apartment using his keys. Given the compelling evidence against defendants Bruce and Anthony and the obvious and significant credibility problems with Sheffield's recantation, we agree with the district court that a new trial would be very unlikely to produce a different result.[2]

**AFFIRMED.**

---

[2]We also reject the defendants' argument that the district court committed plain error by allowing Sheffield to assert a blanket Fifth Amendment privilege as to further questioning at the evidentiary hearing. Any alleged error as to the scope of Sheffield's Fifth Amendment privilege did not affect the defendants' substantial rights. Further testimony from Sheffield, who had been thoroughly impeached by the time he invoked his Fifth Amendment right, would not have affected the outcome of the motion for a new trial. See United States v. Turner, 474 F.3d 1265, 1276 (11th Cir. 2007), cert. denied, 128 S. Ct. 867 (2008) (explaining that errors are plain when they have "a substantial influence on the outcome" or "leave grave doubt as to whether they affected the outcome of a case" (quotation marks omitted)).

12