[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-13627
Non-Argument Calendar
_____

D.C. Docket No. 8:15-cr-00033-VMC-TBM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FRAZIER WILLIAMS, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(August 23, 2017)

Before HULL, WILSON and FAY, Circuit Judges.

PER CURIAM:

Frazier Williams, Jr. appeals his jury conviction and 36-month sentence for one count of aiding, assisting, or procuring the preparation of a false tax return under penalty of perjury. We affirm.

## I. BACKGROUND

In 2006, Williams founded Aztech Energy Corporation ("Aztech"), intended to be a manufacturer and wholesaler of biodiesel. On February 10, 2009, Aztech filed its 2008 federal income tax return with the Internal Revenue Service ("IRS") and claimed a credit in the amount of $2,974,400 for the production, distribution, or use of biofuels.[1] Six years later, a grand jury returned a one-count indictment alleging that Williams willfully aided and assisted in, and procured, counseled, and advised the preparation and presentation to the IRS of a false tax return on behalf of Aztech for calendar year 2008, in violation of 26 U.S.C. § 7206(2).

Prior to trial, Williams filed a motion *in limine* to exclude evidence relating to purchases that were made after the tax refund allegedly was received by Williams, his company, and/or his counsel. Williams stated that the refund money had been deposited into a bank account; however, the government believed that Williams and Sean Donnelly, the manager of Aztech and an attorney, had spent it. Williams argued that any transactions relating to the tax refund were not relevant

---

[1] The IRS's biofuel program was an incentive program, which gave companies tax credits for developing alternative fuels. The rate varied depending on the amount of ethanol in the fuel, and the credit took effect upon the sale of the fuel.

to the charged crime; alternatively, he argued that if the evidence was relevant, its probative value was substantially outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury. The district court denied the motion because it found that the evidence of spending was relevant and not unduly prejudicial. The court indicated that it might reconsider the issue depending on the evidence presented at trial.[2]

At trial, Shirley Ball, an IRS court-witness coordinator, testified that she had gathered and provided to the government certified copies of Aztech's 2006, 2007, and 2008 tax returns. The government admitted into evidence IRS documents from 2006 to 2008. On one of the 2007 tax-return forms, Williams was listed as Aztech's shareholder. According to the 2008 paperwork, Williams was the contact person for Aztech and he owned 100% of the stock. There was a credit for fuel tax in the amount of $2,974,400; Aztech's tax return requested a refund in that amount. The 2008 tax return was filed electronically. While Form 8453-S originally was not signed, there was a signed copy of the form that the IRS had sent to Aztech once it realized that the first form was not signed. Ball testified that the tax return was signed by Williams but the address was for Donnelly's law firm. Donnelly had written a letter stating that his firm, which represented Aztech, had

---

[2] Prior to impaneling the jury, Williams renewed his motion to exclude the evidence of his purchases using the tax-return money. The district court denied the motion without prejudice and offered to reconsider the evidence as it was admitted at trial.

3

provided the IRS with forms and requested a tax refund. Ball testified that, including interest, the IRS had paid Aztech $2,990,217.80.

Three IRS agents—Cindy Ferwerda, Thara Maynor, and Robert Crockett—testified that Williams admitted to preparing and filing Aztech's 2007 and 2008 tax returns. In early 2010, Agents Ferwerda and Maynor audited Aztech based on its 2008 tax return. Agent Ferwerda testified that Williams told her that Aztech had not sold any alcohol/fuel mixture in 2008 because it was still in the research and development stage. After reviewing Aztech's records, Agent Ferwerda only found sales invoices to support 18,033.35 gallons of biodiesel sold; Aztech had claimed for a sale of 92,950 gallons. Additionally, Williams purchased 14,312 gallons of methanol, which could have been used to produce 2,800,000 gallons, not the claimed 4,647,500 gallons.

Agent Maynor testified, for calendar year 2007, a refund for $809,595 had been issued to Aztech and had been distributed to individuals in the company, including to Williams and to Donnelly's trust account. The 2008 refund was $2.9 million and about $1 million of that was controlled by Williams. He used $185,000 to purchase an Aston Martin car and spent $78,038.60 at a jewelry store.[3]

Frank Gnisci, an accountant, testified that Aztech hired him in 2009 to prepare unaudited financial statements for a transaction they were planning. He

---

[3] When the government offered into evidence charts showing how Williams spent the tax-return money, Williams did not object.

spoke with Williams and Donnelly about preparing the 2008 tax return but he did not deal with the tax credits. The taxes were done using a software program; Gnisci believed that only Williams had the password.

After the government rested,[4] Williams moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 and argued that the government had not met its burden on every element of the crime. The district court denied his motion, stating that the evidence was sufficient.

Williams testified that he did not intentionally provide false information to prepare Aztech's 2008 tax return. While Williams had prepared Aztech's 2006 tax return, Donnelly became involved with Aztech near the end of 2007 and prepared the 2007 tax return. In 2008, Williams began to make bio-gasoline and he turned over the company finances to Donnelly. Donnelly was responsible for purchasing ingredients and supplies and was aware of how much was being billed. Williams testified that he had no role in preparing the 2008 tax return, he did not have the password to the software, and he did not tell IRS agents that he had prepared the 2007 and 2008 tax returns. He did, however, sign the 2007 and 2008 tax returns under penalty of perjury. In early 2008, Aztech stopped operations for about nine months. Williams signed and certified, under penalty of perjury, that Aztech had produced 4,832,500 gallons of biofuel in 2008 and requested a tax credit of

---

[4] The government also presented the testimony of several other witnesses regarding Aztech's inability to pay debts and its inability to have produced the claimed biodiesel.

$2,974,400. He stated he had not seen that tax return until the audit several years later but he had signed it because Donnelly told him it was true. When asked how he believed Aztech could have received such a large tax refund after being shut down for nine months, Williams said that Donnelly had found an investor and he thought the $940,000 deposit into his account was from the investor.

At the conclusion of the trial, Williams renewed his motion for judgment of acquittal; the court denied it for the same reason as before. The jury found Williams guilty. Williams filed a motion for new trial based on newly discovered evidence. Williams argued that (1) a deposition of Gnisci in a state civil suit revealed that he refused to answer a question about his involvement with the 2008 tax return and asserted his Fifth Amendment right; (2) for the civil case, Gnisci submitted "billing statements" for work done on the 2008 tax return, despite claiming at trial that he did not work on the return; and (3) Donnelly "most probably" used a software scrubbing program to delete over 11,000 relevant files from a computer server immediately before the state civil court's appointed computer forensic examiner performed a forensic examination ordered by the state judge. R. at 563. The district court denied the motion because there was other "substantial evidence" of Williams' guilt and the newly discovered evidence was impeachment evidence only. R. at 1656. The court stated the most important evidence had been the documents and Williams' own words, not other testimony.

6

The district court adopted the presentence investigation report that had determined the total offense level was 28; the criminal history category was I; the statutory maximum term was 3 years of imprisonment; and the guideline imprisonment range was originally 78 to 97 months, but it was reduced to 36 months because of the statutory maximum term.  In mitigation, Williams argued that he had the support of his family, his family needed him, he had little criminal history, and he had been abused as a child.  The court stated, "I agree with you, he had just a real rough childhood," but noted that millions of dollars had been lost in the crime.  R. at 1682.  The court sentenced him to 36 months of imprisonment, 1 year of supervised release, and $2,974,400 in restitution to the United States.

On appeal, Williams argues the district court committed plain error in admitting evidence of purchases made after issuance of the tax return, erred in denying his motion for judgement of acquittal, abused its discretion in denying his motion for a new trial, and abused its discretion in sentencing him to 36 months of imprisonment.

## II. DISCUSSION

### A. Admissibility of Williams' Purchases

The district court has broad discretion to determine the admissibility of evidence; we will not disturb the district court's judgment absent a clear abuse of discretion.  *United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir. 1998).

7

However, when a defendant fails to preserve or renew during trial his objection to the denial of a motion *in limine*, we review for plain error. *United States v. Brown*, 665 F.3d 1239, 1247 (11th Cir. 2011). To establish plain error, the defendant must show (1) there was an error; (2) that was plain or obvious; and (3) affected his substantial rights in that it was prejudicial and not harmless. *Id*. at 1247 n.3.

Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401. The district court may exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403. "Use of a defendant's wealth to appeal to class bias can be highly improper and can deprive that defendant of a fair trial. But evidence of wealth or extravagant spending may be admissible when relevant to issues in the case and where other evidence supports a finding of guilt." *United States v. Bradley*, 644 F.3d 1213, 1271 (11th Cir. 2011) (internal quotation marks and citation omitted). "Motive is always relevant in a criminal case, even if it is not an element of the crime." *United States v. Hill*, 643 F.3d 807, 843 (11th Cir. 2011) (alteration omitted) (quoting *United States v. Sriyuth*, 98 F.3d 739, 747 n.12 (3d Cir. 1996)).

Here, we review for plain error because Williams failed to renew his objection during trial. *See Brown*, 665 F.3d at 1247. Because the evidence at trial

showed that Aztech had shut down for a large portion of 2008, Williams' use of the tax-return money to make purchases was relevant to show his motive in filing the false return. *See Hill*, 643 F.3d at 843. Furthermore, the probative effect, in showing either motive or intent, was not outweighed by the prejudicial effect of letting the jury know about his spending. *See* Fed. R. Evid. 403; *Bradley*, 644 F.3d at 1271. The court therefore did not commit error, under plain error review, in admitting evidence of Williams' purchases. *See Brown*, 665 F.3d at 1247. Viewing the evidence in the light most favorable to admission,[5] it was relevant to prove Williams' knowledge and motive. *See* Fed. R. Evid. 401.

## B. Sufficiency of the Evidence

We review de novo whether the evidence was sufficient to sustain a criminal conviction, viewing the evidence in the light most favorable to the government, and drawing all reasonable factual inferences in favor of the jury's verdict. *United States v. Jiminez*, 564 F.3d 1280, 1284 (11th Cir. 2009). The evidence will be sufficient if a reasonable trier of fact could determine that it established the defendant's guilt beyond a reasonable doubt. *Id.* at 1284-85. Accordingly, it is not enough for a defendant to put forth a reasonable hypothesis of innocence, as the issue is not whether a jury reasonably could have acquitted but whether it

---

[5] *See United States v. Bradberry*, 466 F.3d 1249, 1253 (11th Cir. 2006) ("In evaluating the district court's ruling under Rule 403, we view the evidence in the light most favorable to admission, maximizing its probative value and minimizing its undue prejudicial impact.").

9

reasonably could have found the defendant guilty. *Id.* at 1285. In conducting sufficiency review, we will not revisit the question of witness credibility unless the testimony is "incredible as a matter of law." *United States v. Chastain*, 198 F.3d 1338, 1351 (11th Cir. 1999). When a defendant chooses to testify, he runs the risk that, if disbelieved, the jury might conclude the opposite of his testimony is true, and his false testimony may be considered as substantive evidence of his guilt. *United States v. Vazquez*, 53 F.3d 1216, 1225-26 (11th Cir. 1995).

To prove a violation of 26 U.S.C. § 7206, the government had to prove that Williams (1) willfully and knowingly aided or assisted (2) in the preparation or filing of a federal income tax return (3) that contained material statements that the defendant knew to be false. 26 U.S.C. § 7206(2). The government's evidence at trial, in the form of testimony and IRS documents, was sufficient for a reasonable jury to determine beyond a reasonable doubt that Williams willfully and knowingly aided or assisted in the preparation or filing of Aztech's 2008 federal income tax return that contained material statements about biofuel credits that he knew to be false. *See* 26 U.S.C. § 7206(2); *Jiminez*, 564 F.3d at 1284-85. It was not enough for Williams to present his hypothesis of innocence—that his coworkers used him to file the tax return themselves and lied to him about it—as the issue is not whether the jury reasonably could have acquitted but whether it reasonably could have found Williams guilty. *See Jiminez*, 564 F.3d at 1285.

Williams' testimony itself is also substantive evidence of his guilt, as the jury was entitled to conclude that the opposite of his testimony was true. *See Vazquez*, 53 F.3d at 1226. Additionally, as the trial testimony did not appear to be "incredible as a matter of law," we will not evaluate the jury's credibility determinations about the IRS agents, Williams, and other witnesses. *See Chastain*, 198 F.3d at 1351. Accordingly, the district court did not err in denying the motion for judgment of acquittal. *See Jiminez*, 564 F.3d at 1284.

## C. Motion for New Trial

We review for an abuse of discretion the district court's denial of a motion for new trial. *United States v. Garcia*, 13 F.3d 1464, 1472 (11th Cir. 1994). The defendant bears the burden of justifying a new trial. *United States v. Campa*, 459 F.3d 1121, 1151 (11th Cir. 2006) (en banc).

> To succeed on a motion for new trial based on newly discovered evidence, the movant must establish that (1) the evidence was discovered after trial, (2) the failure of the defendant to discover the evidence was not due to a lack of due diligence, (3) the evidence is not merely cumulative or impeaching, (4) the evidence is material to issues before the court, and (5) the evidence is such that a new trial would probably produce a different result.

*United States v. Jernigan*, 341 F.3d 1273, 1287 (11th Cir. 2003) (quoting *United States v. Ramos*, 179 F.3d 1333, 1336 n.1 (11th Cir. 1999)).

Even assuming all of the evidence was discovered after trial, the district court did not abuse its discretion in denying the motion because the evidence was

11

impeachment evidence and it was unlikely to produce a different result in a new trial. *See Garcia*, 13 F.3d at 1472. As to the deleted files, even if a witness did delete them, there is no indication that they would have been exculpatory and produce a different result at trial because there is nothing showing what was in those files. *See Jernigan*, 341 F.3d at 1287. Another witness's refusal to answer questions at the civil deposition and billing statements that contradicted Williams' criminal trial testimony are impeachment evidence because they go to credibility and are not direct evidence of guilt. *See id.* Furthermore, none of the evidence necessarily would produce a new result at trial, in light of the testimony of the IRS agents and the documentary evidence showing that Williams signed the tax return knowing it to be false. *See id.* Accordingly, Williams did not meet his burden to justify a new trial. *See Campa*, 459 F.3d at 1151.

**D. Williams' Sentence**

We review the reasonableness of a sentence under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007). The party who challenges the sentence bears the burden to show that the sentence is unreasonable given the seven 18 U.S.C. § 3553(a) factors and the record. *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010). On substantive-reasonableness review, we may vacate the sentence only if we are left with the definite and firm conviction that the district court committed a clear error

12

of judgment in weighing the § 3553(a) factors to arrive at an unreasonable sentence based on the facts of the case. *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc). The district court must issue a sentence sufficient, but not greater than necessary to comply with the purposes of § 3553(a)(2), which include the need for a sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter criminal conduct, and protect the public from future criminal conduct. 18 U.S.C. § 3553(a). The weight given to any § 3553(a) factor is a matter committed to the discretion of the district court. *United States v. Williams*, 526 F.3d 1312, 1322 (11th Cir. 2008).

Here, the district court did not abuse its discretion in imposing the 36-month sentence in light of the § 3553(a) factors, namely, the need for the sentence to reflect the seriousness of the offense, provide just punishment, deter criminal conduct, and protect the public from future criminal conduct. *See* 18 U.S.C. § 3553(a); *Gall*, 552 U.S. at 51, 128 S. Ct. at 597. The court stated at the sentencing hearing that it considered the mitigating evidence, but gave more weight to the seriousness of the offense, namely, the high amount of loss. *See Williams*, 526 F.3d at 1322. Accordingly, the district court did not commit a clear error of judgment in weighing the § 3553(a) factors to arrive at the sentence based on the facts of the case. *See Irey*, 612 F.3d at 1190.

**AFFIRMED.**

13